**UNITED STATED DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SREENIVASAN ASOKAN, et al.,**

        **Plaintiffs,**

                               **Case No. 6:15-cv-2048-Orl-40-KRS**

**v.**

**AMERICAN GENERAL LIFE**
**INSURANCE COMPANY**

        **Defendant.**

_____

**JOINTLY PROPOSED JURY INSTRUCTIONS**
**(Exhibit "9" to Pretrial Stipulation)**

Pursuant to the Court's Case Management and Scheduling Order [Dkt. 35], Plaintiffs, SREENIVASAN ASOKAN, et al. (collectively "Plaintiffs") and Defendant, AMERICAN GENERAL LIFE INSURANCE COMPANY ("Defendant" or "American General") submit their Jointly Proposed Jury Instructions as follows:

i

1. <u>**General Preliminary Instruction  (Eleventh Circuit Civil Pattern Jury Instruction No. 1.1)**</u>

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

<u>What is evidence</u>:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence</u>:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- · the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- · the witness's memory;

- · the witness's manner while testifying;

- · any interest the witness has in the outcome of the case;

- · any bias or prejudice the witness may have;

- · any other evidence that contradicts the witness's testimony;

- · the reasonableness of the witness's testimony in light of all the evidence; and

- · any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiffs, Sreenivasan Asokan, M.D.; Anuradha Asokan; Chakravarthy Raghavan, M.D.; Nanni Pidikiti, M.D.; Rakesh Parekh, M.D.; Tejal Parekh; Ram Reddy, M.D.; Madhubala Reddy; Roger Lodge; Pamela Paulshock; Independent Anesthesia Services, P.A.; C. Raghavan, M.D., P.A.; Nanni Pidikiti, M.D., P.C.; Rakesh Parekh, M.D., P.A.; Family Internal Medicine, P.A.;  Three Point Productions, Inc., claim the Defendant, American General Life

3

Insurance Company ("American General"), violated Florida's Misleading Advertising Law (Count III); and committed fraud by concealment (Count IV); common law fraud (Count V);; breach of fiduciary duty (Count VII); constructive fraud (Count VIII); and negligent misrepresentation (Count X).[1]

American General denies those claims. The VEBA administrators told Plaintiffs in written disclosures signed by the Plaintiffs how the Plans would work; the Plaintiffs acknowledged in writing that they understood how the VEBAs would work; Plaintiffs were encouraged and had full opportunity to seek counsel from their accountants and lawyers before entering into the VEBA transaction; and Plaintiffs confirmed to both American General and the Internal Revenue Service that they were not relying on any tax advice from American General or its agents in deciding to participate in the Plans. By participating in the Plans, each Plaintiff group received substantial tax benefits. American General sold life insurance products to the VEBA, not the Plaintiffs. It did not create, administer, promote, or sell the VEBA Plans.

Burden of proof:

Plaintiffs have the burden of proving his/her/its case by what the law calls a "preponderance of the evidence." That means Plaintiffs must prove that, in light of all the evidence, what [he/she/it] claims is more likely true than not. So, if you could put the evidence favoring Plaintiffs and the evidence favoring American General on opposite sides of balancing scales, Plaintiffs need to make the scales tip to [his/her/its] side. If Plaintiffs fail to meet this burden, you must find in favor of American General.

---

[1] To the extent this Court grants Plaintiffs' Motion for Reconsideration of Order Granting Motion to Dismiss RICO Claims [Dkt. 110], Plaintiffs' have included instructions related to their claims for violation of Florida's Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I) and aiding and abetting (Count VI). American General objects to the inclusion of these instructions.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," American General has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts American General must prove for any affirmative defense. After considering all the evidence, if you decide that American General has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social-networking websites such as Facebook, MySpace, and Twitter.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes</u>:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, [Plaintiffs] will present [his/her/its] witnesses and ask them questions. After [Plaintiffs] question the witness, American General may ask the witness questions – this is called "cross-examining" the witness. Then American General will present its witnesses, and [Plaintiffs] may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 1.1

2. __The Duty to Follow Instructions – Corporate Party Involved  (Eleventh Circuit Civil Pattern Jury Instruction No. 3.2.2)__

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

__AUTHORITY:__ Eleventh Circuit Civil Pattern Jury Instruction No. 3.2.2

**3.** **Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court (Eleventh Circuit Civil Pattern Jury Instruction No. 3.3)**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 3.3

4. **Credibility of Witnesses (see Eleventh Circuit Civil Pattern Jury Instruction No. 3.4)**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

    1. Did the witness impress you as one who was telling the truth?

    2. Did the witness have any particular reason not to tell the truth?

    3. Did the witness have a personal interest in the outcome of the case?

    4. Did the witness seem to have a good memory?

    5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

    6. Did the witness appear to understand the questions clearly and answer them directly?

    7. Did the witness's testimony differ from other testimony or other evidence?

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 3.4.

5. **Plaintiffs' Contested Charge: Judicial Notice (Eleventh Circuit Civil Pattern Jury Instruction 2.5)**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice."  I've accepted the fact that the VEBA Plan was a listed transaction and the U.S. Department of Justice filed a civil action in U.S. District Court for the Central District of California (Case No. 13-CV-01582-JLS-JPR) against Sea Nine Associates, Inc. and Kenneth Elliott to enjoin them from continuing to market and sell participation rights in American General's VEBA Programs because they do not comply with § 419(f)(6).

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 2.5.


**DEFENDANT'S OBJECTION:**

American General does not object to the form instruction. It does however object to the "facts" that Plaintiffs ask the Court to take judicial notice of.

First, American General objects to the statement that the Court takes judicial notice of "the fact that the VEBA Plan was a listed transaction." There is no such fact. No Court has ever determined that the Sea Nine VEBA Plans are "Listed Transactions." Here, the IRS settled with Plaintiffs rather than having a tax court consider the Listed Transaction question. Indeed, Plaintiffs themselves disputed that the Plans were Listed Transactions in those proceedings and obtained beneficial settlements that reduced or removed assessments previously made against them.

Second, American General objects that such a determination is even capable of judicial notice.  *See* FED. R. EVID. 201.

Third, the "fact" that the Plaintiffs ask the Court to take judicial notice of—that the VEBA Plans are "Listed Transactions"—is not true. As Judge Staton (who presided over the DOJ litigation Plaintiffs reference) held in the *Ulti-Mate* case, while "Plaintiffs are compelled to argue that the VEBA transactions at issue are Listed Transactions in the eyes of the IRS," there are other VEBA participants "who have not yet been audited *or who have been audited but found to be in compliance*. . ." *Ulti-Mate Connectors, Inc., et al. v. American General, et al.*, No. 8:14-cv-1051-JLS-JPR (C.D. Cal. May 18, 2016) (order denying Plaintiffs' motion for class certification) (emphasis added). Judge Staton also noted that these individuals who have not yet been audited may want to argue that the VEBAs are complaint to the IRS in the future, and a judicial order regarding their non-compliance would "run the risk of" preventing these individuals from doing so.  Plaintiffs here ask this Court to give them through "judicial notice"

what their counterparts in other litigation have already failed to obtain for good reason. Indeed, Plaintiffs themselves were able to keep the deductions they took for many years they contributed, and not all were assessed penalties for their failure to report participation in a Listed Transaction.

Moreover, American General objects to this instruction because it implies that the DOJ's position is a fact and is the Court's position. The District Court for the Central District of California never made any finding regarding whether the "VEBA Programs [] comply with § 419(f)(6) [sic]."

Finally, American General objects to this instruction as implying that the VEBA Plans are "American General's VEBA Plans," which they are not.  The central factual dispute in this case regards the extent of involvement that American General had with those Plans.

**6.** **Stipulations (Eleventh Circuit Civil Pattern Jury Instruction No. 2.1)**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 2.1

**7.   Use of Depositions (Eleventh Circuit Civil Pattern Jury Instruction No. 2.2)**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of certain witnesses will be presented to you by a video or by reading the transcript. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 2.2

**8.** **Impeachment of Witnesses Because of Inconsistent Statements (Eleventh Circuit Civil Pattern Jury Instruction No. 3.5.1)**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 3.5.1.

**9.** **Expert Witness (Eleventh Circuit Civil Pattern Jury Instruction No. 3.6.1)**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 3.6.1

**10. <u>Responsibility for Proof – Plaintiff's Claims– Preponderance of the Evidence (Eleventh Circuit Civil Pattern Jury Instruction No. 3.7.1)</u>**

In this case it is Plaintiffs' responsibility to prove every essential part of each of their claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that each Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiffs.

Because more than one claim is involved here, you should consider each claim separately. This also means that you should consider the claim brought by each Plaintiff separately from the claims brought by other Plaintiffs.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Plaintiffs' claims by a preponderance of the evidence, you should find for American General as to that claim.


**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 3.7.1.

**11. <u>Responsibility for Proof – Affirmative Defense Preponderance of the Evidence (Eleventh Circuit Civil Pattern Jury Instruction No. 3.7.2)</u>**

In this case, American General asserts several affirmative defenses. Even if any Plaintiff can prove his/her/its claim(s) by a preponderance of the evidence, American General can prevail if it proves an affirmative defense by a preponderance of the evidence.

Just as with the Plaintiffs' claims, American General asserts more than one affirmative defense, and you should consider each one separately.

I caution you that American General does not have to disprove any of Plaintiffs' claims. Any affirmative defense raised by American General must be proven by a preponderance of the evidence.

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 3.7.2

**12. <u>Burden of Proof—Clear and Convincing Evidence (Eleventh Circuit Pattern Jury Instruction 1.2)</u>**

Sometimes a party has the burden of proving a claim or defense by clear and convincing evidence. This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain. The court will tell you when to apply this standard.

AUTHORITY: Eleventh Circuit Pattern Jury Instruction 1.2.

### 13. <u>Defendant's Contested Charge: Agency Instruction</u>

The Defendant in this case is American General. Plaintiffs allege that there were other individuals or entities working on behalf of American General as its "agents" when they promoted or administered the VEBA Plans. These persons are:

- Kenneth Elliott
- Lalat Pattanaik
- Laban Pattanaik
- Innovative Private Strategies and Insurance Services

It is Plaintiffs' burden to prove that other individuals or entities were acting as American General's agents. If they were not American General's agents, then American General is not responsible for their actions. If, however, you find that these individuals were acting as American General's agents, then it can be responsible for their actions.

Even where a person is an agent, agency is not unlimited. In determining whether American General is liable for any of these individuals' conduct, you must consider the following.

First, you should understand that only American General can make someone its agent. If the individual claims that he or she is acting as American General's agent even though they do not have authority to do so, it does not create an agency relationship. Even if the person (here, Plaintiffs) believe the individual (like Elliott or Mr. Pattanaik) is American General's agent, and think that those persons are acting on behalf of American General, that does not create an agency relationship. Only the words and actions of American General can make someone its agent.

Second, you should consider the timing of the agency relationship. An individual may be authorized to act on behalf of someone for a time, and then have their authority to act on behalf of that person removed. In order for the person's conduct to be attributable to the principal, he must be an agent at the time he performed the conduct.

Third, you should consider whether the individual was authorized to take the action that he did. A person may be authorized to take some conduct, but not others. A principal will only be responsible for conduct that the principal authorizes the agent to take. In this case, the question for you the jury will be whether American General authorized these individuals to sell the VEBA Plans on its behalf.

Finally, using the American General insignia or logo is not enough to make individuals who hand out documents with that logo an agent of American General.

**AUTHORITY:**

*Elements for Apparent Agency Generally.* "[T]o establish a claim based on apparent agency, three elements must be proven: (a) a representation by the purported principal, (b) a reliance on that representation by a third party, and (c) a change in position by the third party in reliance on the representation." *Jackson Hewitt, Inc. v. Kaman*, 100 So.3d 19, 32 (Fla. 2d DCA 2011) (citing *Mobil Oil Corp. v. Bransford,* 648 So.2d 119, 121 (Fla.1995)).

*Creation of Apparent Agency Must be by Principal.* Only American General—as the purported principal—can create the apparent agency; no third party, intermediary, or purported agent can do so. "the claimant must show that the *purported principal* [American General] represented to him or acted in such a way as to lead him to believe that the purported agent was, in fact, his agent." *Id.*, 100 So.3d at 32 (emphasis added). Plaintiffs' subjective beliefs are irrelevant to the inquiry. *Izquierdo v. Hialeah Hosp., Inc.*, 709 So. 2d 187, 188 (Fla. 3d DCA 1998) ("'Apparent authority' does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, 'apparent authority' exists only where the *principal* creates the appearance of an agency relationship." (citation omitted; emphasis in original)).

*Scope of Agency and Timing.* *Kemberling v. MetLife Life & Annuity Co. of Connecticut*, 368 F. App'x 63, 66 (11th Cir. 2010) (". . . the district court correctly held that there was no evidence in the record that Weaver had any sort of authority to act for MetLife after the policy was issued, and, therefore, information Weaver may have obtained from Kemberling after the issuance of the policy could not be imputed to MetLife.").

*Representation about agency must be from principal.* *Blunt v. Tripp Scott, P.A.*, 962 So. 2d 987, 989 (Fla. 4th DCA 2007) ("Nothing *Gavin* did or said in the present litigation created a representation that Frank had authority to negotiate on Gavin's behalf. Frank's authority to settle was that of an agent "who ... ingeniously create[d] an appearance of authority by [his] own acts." (citation omitted; emphasis in original)).

*Insignia & Logo. Id.* at 32-33 ("… the mere display by the franchisee of the franchisor's trademark and logo, or the sale of the franchisor's products, does not constitute a representation sufficient to create an apparent agency.").

**PLAINTIFFS' OBJECTION:**

Plaintiffs object to American General's proposed agency instruction because it is overly complicated and heavily slanted in favor of American General. Additionally, American General's instruction does not adequately instruct the jury on the doctrine of apparent agency. Plaintiffs further object that it excludes Laban Pattanaik, Peter Mordin, David Robinson, and Innovative Private Strategies and Insurance Services as alleged agents of Defendant. In lieu of Defendant's proposed agency instruction, Plaintiffs propose the following separate instructions.

**14. Plaintiffs' Contested Charge: Agent and Principal - Definition**

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. One may be an agent without receiving compensation for services. The agency agreement may be oral or written.

**AUTHORITY:** Ninth Circuit Model Jury Instructions Civil 4.4; Restatement (Third) Of Agency § 7.04 (2006) (Agent Acts with Actual Authority); Restatement (Third) Of Agency § 7.08 (2006) (Agent Acts with Apparent Authority); Restatement (Third) Of Agency § 7.03 (2006) (Principal's Liability—In general); Restatement (Third) Of Agency § 7.06 (2006).

**DEFENDANT'S OBJECTION:**

American General objects to Plaintiffs' proposed separated agency instructions because they are not based on any Eleventh Circuit or Florida law. Plaintiffs' proposed Ninth Circuit Model Jury Instructions and the Restatement (Third) of Agency are not the law binding on this case and misstate Florida law and/or are incomplete in their description of Florida agency principles. Indeed, many of the Restatement provisions have not been cited favorably or adopted by any Florida court. Plaintiffs have offered no relevant authority for their proposed instruction.

American General instead proposes using its consolidated agency instruction above.

**15. <u>Plaintiffs' Contested Charge: Scope of Authority Defined</u>**

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

<u>**AUTHORITY:**</u> Ninth Circuit Model Jury Instructions Civil 4.5

<u>**DEFENDANT'S OBJECTION:**</u>

American General objects to Plaintiffs' proposed separated agency instructions because they are not based on any Eleventh Circuit or Florida law. Plaintiffs' proposed Ninth Circuit Model Jury Instructions are not the law binding on this case. Plaintiffs have offered no relevant authority for their proposed instruction.

In particular, the scope of authority as defined in this Ninth Circuit instruction does not define all of the contours of the scope of agency issue that is relevant to this case under Florida, as the cases cited above by American General do.

American General instead proposes using its consolidated agency instruction above.

**16. Plaintiffs' Contested Charge: Apparent Agency**

If American General has intentionally or unintentionally caused the Plaintiffs to believe that Peter Mordin, David Robinson, Kenneth Elliot, Lalat Pattanaik, Laban Pattanaik, and/or Innovative Private Strategies and Insurance Services, was/were the principal's agent(s), a relationship known as "apparent agency" may be created, even if no actual authority was ever given to the agent. Apparent agency, however, can never arise solely from the acts of the alleged agent.

In order to establish apparent agency, the Plaintiffs must prove that:

1.      The alleged principal caused, by representation or action, the Plaintiffs to believe that Peter Mordin, David Robinson, Kenneth Elliot, Lalat Pattanaik, Laban Pattanaik, and/or Innovative Private Strategies and Insurance Services was/were the principal's agent(s);

2.      The Plaintiffs relied on this representation or action to his, her, or its detriment; and

3.      Such reliance was reasonably justified.

If an apparent agency has been established, the principal is liable for the acts of the apparent agent just as if the principal had authorized the agent from the outset.

**AUTHORITY:** Ninth Circuit Model Jury Instructions Civil 4.6; See also, Restatement (Third) Of Agency § 2.03 (2006) ("Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.").

**DEFENDANT'S OBJECTION:**

American General objects to Plaintiffs' proposed separated agency instructions because they are not based on any Eleventh Circuit or Florida law. Plaintiffs' proposed Ninth Circuit Model Jury Instructions are not the law binding on this case.  Plaintiffs have offered no relevant authority for their proposed instruction.

***Elements Generally.*** Initially, Plaintiffs have excluded the required element that the party "change [a] position in reliance on the representation." "[T]o establish a claim based on apparent agency, three elements must be proven: (a) a representation by the purported principal, (b) a reliance on that representation by a third party, and (c) a change in position by the third party in

reliance on the representation." *Jackson Hewitt, Inc. v. Kaman*, 100 So.3d 19, 32 (Fla. 2d DCA 2011) (citing *Mobil Oil Corp. v. Bransford,* 648 So.2d 119, 121 (Fla.1995)).

     ***Scope and Creation of Apparent Agency.*** Additionally, the scope of apparent authority as defined in this Ninth Circuit instruction conflicts with applicable Florida law. As argued in American General's summary judgment motion, a party can only be the apparent agent of a principal during the period of time and only for the limited purposes that the principal authorizes. *Kemberling v. MetLife Life & Annuity Co. of Connecticut*, 368 F. App'x 63, 66 (11th Cir. 2010). Additionally, only American General—as the purported principal—can create the apparent agency; no third party, intermediary, or purported agent can do so. "the claimant must show that the *purported principal* [American General] represented to him or acted in such a way as to lead him to believe that the purported agent was, in fact, his agent." *Id.*, 100 So.3d at 32 (emphasis added). Plaintiffs' subjective beliefs are irrelevant to the inquiry. *Izquierdo v. Hialeah Hosp., Inc.*, 709 So. 2d 187, 188 (Fla. 3d DCA 1998) ("'Apparent authority' does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, 'apparent authority' exists only where the *principal* creates the appearance of an agency relationship." (citation omitted; emphasis in original)). American General instead proposes using its consolidated agency instruction above.

**17. <u>Plaintiffs' Contested Charge: Imputed Intent — Corporation and Agent</u>**

Under Florida law, a corporation is considered to have all of the knowledge obtained by its agent, as long as the agent was acting within the scope of his authority or employment by the corporation. In addition, the actions and representations of the agent are also imputed to the corporation. But, this does not mean that a corporations' knowledge of a fact, action, or representation is imputed to the agent.

**<u>AUTHORITY:</u>**

Restatement (Third) Of Agency § 5.03 (2006); <u>*Chang v. JPMorgan Chase Bank, N.A.*</u>, 845 F.3d 1087, 1095 (11th Cir. 2017) ("Under Florida law, knowledge an agent or employee acquires within the scope of her authority generally may be imputed to her principal or employer."); *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998) (recognizing that under Florida law knowledge of officer is generally imputed to corporation).

**<u>DEFENDANT'S OBJECTION:</u>**

American General objects to this requests title of "imputed intent," which is not supported by either the instruction nor the cases cited. Imputing an agent's knowledge to his or her principal is not the same as imputing "intent."

American General further objects to this instruction as blurring the lines between "employees" (who act in the course and scope of their "employment") and agents (who act in the course and scope of their "authority"). The instruction, as worded, is unclear, confusing, and appears to misstate Florida law (which, at a minimum, it is unsupported by).

American General instead proposes using its consolidated agency instruction above.

**18. <u>Plaintiffs' Contested Charge: Imputed Intent — Principal and Agent</u>**[2]

A principal or employer will be held liable for both negligent and intentional torts committed by its agents or employees during the scope of their employment. An act of an agent or employee is done in the scope of employment if it is the kind of act he or she is employed to perform, the act occurs substantially within the time and space limits of the employment, and the act is motivated, at least in part, to serve the interests of the principal or employer.

**<u>AUTHORITY:</u>**

Restatement (Third) Of Agency § 7.07 (2006); Restatement (Third) Of Agency § 7.03 (2006); Restatement (Third) Of Agency § 7.04 (2006).

**<u>OBJECTION:</u>**

American General objects to this requests title of "imputed intent," which is not supported by either the instruction nor the cases cited. Imputing an agent's knowledge to his or her principal is not the same as imputing "intent."

American General objects to Plaintiffs' proposed separated agency instructions because they are not based on any Eleventh Circuit or Florida law. Plaintiffs' proposed Restatement Instruction is not the law binding on this case as Florida has adopted only certain provisions of the Restatement and it is incomplete in its description of Florida agency principles.

Moreover, Plaintiffs misstate the authority that they do rely on. The Restatement (Third) of Agency provisions cited deals only with *employees* acting within the scope of their employment. An "agent" cannot act within the scope of his or her employment, since an employment relationship would make the actor an employee and not merely an agent. This renders the instruction not only an incorrect statement of law but confusing.

---

[2] At 5:54 p.m. Eastern Time on July 25, 2017—the day these Jointly Proposed Jury Instructions had to be filed with the Court—Plaintiffs submitted to American General myriad new instructions regarding nominal/restitution damages and agency. These instructions were not tailored to the facts of the case and cited almost entirely law from the Restatement (Third) of Agency and other secondary sources rather than applicable Florida law. In addition to not being tailored to the case, they are unsupported by Plaintiffs' live pleading. American General objects to these instructions and asks the Court to strike them.

American General further objects that this instruction is duplicative of Plaintiffs' vicarious liability instruction below, and for this additional reason confusing to the jury.

American General instead proposes using its consolidated agency instruction above.

### 19. **Plaintiffs' Contested Charge: Vicarious Liability**

An agent is a person who is employed to act for another, and whose actions are controlled by his corporation or are subject to his corporation's right of control. *Respondeat superior* is the doctrine holding an employer, principal, or corporation liable for the employee's or agent's wrongful acts committed within the scope of employment or agency.

A corporation is responsible for the acts of its agent if such acts occur while the agent is performing services which he was employed to perform or while the agent is acting at least in part because of a desire to serve the corporation and is doing something that is reasonably incidental to his employment or something the doing of which was reasonably foreseeable and reasonably to be expected of persons similarly employed.

The agency theories of liability permit an injured plaintiff to recover damages against an corporation for acts an agent committed outside the scope and course of employment. The issue is whether the incident was reasonably foreseeable.

If you determine that Peter Mordin, David Robinson, Kenneth Elliot, Lalat Pattanaik, Laban Pattanaik, and/or Innovative Private Strategies and Insurance Services were agents of American General, you must determine whether the Plaintiffs can prove the following elements:

(1) The corporation was on notice of the potentially harmful propensities of the agent.

(2) The plaintiffs were within the zone of foreseeable risks created by the operating agreements.

(3) The corporation's breach of duty was the proximate cause of the plaintiffs' injuries.

**AUTHORITY:** Fla. Std. Jury Instr. (Civ.) § 404.14 - as modified; *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313 (M.D. Fla. 2002); *Malicki v. Doe*, 814 So. 2d 347, (Fla. 2002); Garcia v. Duffy, 492 So. 2d 435 (Fla. 2d DCA 1986). *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996); Restat. 2d of Torts, § 18.1; *Schropp v. Crown Eurocars*, 654 So. 2d 1158 (Fla. 1995); Fla. Std. Jury Instr. (Civ.) §§ 401.4-7 - as modified; Restatement (Third) Of Agency § 2.04 (2006) (stating doctrine of respondeat superior, "[a]n employer is subject to liability for torts committed by employees while acting within the scope of their employment.") Restatement (Third) Of Agency § 7.04 (2006) (Agent Acts with Actual Authority); Restatement (Third) Of Agency § 7.07 (2006) (employee acting within scope of employment); Restatement (Third) Of Agency § 7.03 (2006) (Principal's Liability—In general); Restatement (Third) Of Agency § 7.08 (2006) ("A principal is subject to vicarious liability for a tort committed by an agent in dealing or communicating with a third party on or purportedly on behalf of the principal when actions taken by the agent with apparent authority constitute the tort or enable the agent to conceal its commission.")

**<u>DEFENDANT'S OBJECTION</u>:**

American General objects to this instruction as duplicative of the instruction regarding agents.  As to employees, the only two American General employees at issue are Peter Mordin and David Robinson.  American General does not dispute that Mordin and Robinson were its employees or that they were acting within the course and scope of their employment. Liability for third-party "agents" is covered by other instructions and questions.

**20. Plaintiffs' Contested Charge: Ratification**

As long as it has knowledge of the material facts of the transaction, an insurance company may ratify an act or contract performed or made by the company's actual or purported agent without authority to bind the company, so as to become bound thereby.

Ratification of an act or contract may be effected by silence, acquiescence, or the failure to repudiate it; by basing a suit or defense thereon; or by the receipt and retention of the benefits arising from it, such as premiums.

Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority. A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents. If a person makes a manifestation that the person has ratified another's act and the manifestation, as reasonably understood by a third party, induces the third party to make a detrimental change in position, the person may be estopped to deny the ratification

A person may ratify an act if the actor acted or purported to act as an agent on the person's behalf.

**AUTHORITY:** 30 Fla. Jur 2d Insurance § 668 (footnotes omitted); Restatement (Third) Of Agency § 4.01 (2006) (Ratification Defined); Restatement (Third) Of Agency § 4.08 (2006) (Estoppel to Deny Ratification); Restatement (Third) Of Agency § 4.03 (2006).

**DEFENDANT'S OBJECTION:**

American General objects that Plaintiff's proposed ratification instruction relies on a secondary source summary of Florida law and the Restatement (Third) of Agency rather than any binding Florida legal precedent or statute. Indeed, most of the Restatement (Third) of Agency has not been cited favorably nor adopted by Florida courts, meaning Plaintiffs' instruction misstates the boundaries of Florida law. American General further objects that this instruction is confusing and not tailored to the facts of this case ("by basing a suit or defense thereon").

American General further objects that this instruction, taken from a summary of Florida insurance law, confusingly equates an insurance agent whose agency is limited in scope with the legal agent of a principal.

**21. Defemdat's Contested Charge: Ratification**

A principal is not liable for the unauthorized actions of its agent unless the principal ratifies those unauthorized actions.

To establish ratification, Plaintiffs must show that American General was fully informed of all material facts concerning an agent's unauthorized acts, or was willfully ignorant or purposely refrained from seeking information that would have disclosed the unauthorized acts, and approved of the unauthorized acts.

Ratification must be unequivocal and intelligent: if American General does not have full knowledge of all material facts and circumstances relating to the unauthorized act or transaction at the time of the alleged ratification, then ratification has not occurred.  There must be an affirmative showing of American General's intent to ratify the act in question.

It is not enough that American General had notice that should have caused it to make inquiry that would have brought the unauthorized act to its knowledge.

There is also no duty upon American General to make inquiries as to whether the agent carried out his responsibilities, but rather, American General has the right to presume the agent followed instructions and did not exceed his authority.

**AUTHORITIY:**

*Anderson v. Branch Banking and Trust Co.*, 119 F. Supp. 3d 1328, 1354 (S.D. Fla. 2015); *Bach v. Florida State Bd. Of Dentistry,* 378 So.2d 34, 36-37 (Fla. 1st DCA 1979).

32

**22. <u>Plaintiffs' Contested Charge: Estoppel to Deny Existence of Agency Relationship</u>**

A person who has not made a manifestation that an actor has authority as an agent and who is not otherwise liable as a party to a transaction purportedly done by the actor on that person's account is subject to liability to a third party who justifiably is induced to make a detrimental change in position because the transaction is believed to be on the person's account, if

> (1) the person intentionally or carelessly caused such belief, or

> (2) having notice of such belief and that it might induce others to change their positions, the person did not take reasonable steps to notify them of the facts.

<u>**AUTHORITY**</u>: Restatement (Third) Of Agency § 2.05 (2006).

<u>**DEFENDANT'S OBJECTION:**</u>

American General objects to the inclusion of this instruction because it does not accurately state Florida law. In particular, Florida law is clear that only a principal can create apparent authority through its words and actions, as described on other instructions. Additionally, the only authority Plaintiffs cite for this instruction is the Restatement (Third) of Agency, even though no Florida state court has cited this provision. Plaintiffs provide no other authority that it accurately represents the status of Florida law.

**23. <u>Plaintiffs' Contested Charge: Issues on Principal's Liability</u>**

A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent.

When a principal has a special relationship with another person, the principal owes that person a duty of reasonable care with regard to risks arising out of the relationship, including the risk that agents of the principal will harm the person with whom the principal has such a special relationship.

An undisclosed principal is subject to liability to a third party who is justifiably induced to make a detrimental change in position by an agent acting on the principal's behalf and without actual authority if the principal, having notice of the agent's conduct and that it might induce others to change their positions, did not take reasonable steps to notify them of the facts.

An undisclosed principal may not rely on instructions given an agent that qualify or reduce the agent's authority to less than the authority a third party would reasonably believe the agent to have under the same circumstances if the principal had been disclosed.

**AUTHORITY**: Restatement (Third) Of Agency § 7.05 (2006)(Principal's Negligence in Conducting Activity Through Agent; Principals Special Relationship with Another Person); Restatement (Third) Of Agency § 2.06 (2006) (liability of undisclosed principal).

**<u>DEFENDANT'S OBJECTION:</u>**

American General objects to the inclusion of this instruction because it does not accurately state Florida law. Additionally, the only authority Plaintiffs cite for this instruction is the Restatement (Third) of Agency, even though no Florida court has ever adopted or favorably cited § 7.05. Indeed, § 2.06 has not been favorably cited in any published legal opinion from *any* jurisdiction. Plaintiffs provide no other authority that these Restatement provisions accurately represent the status of Florida law. The proposed instruction is also not supported by or applicable to the factual allegations in Plaintiffs' Second Amended Complaint. American General further objects that this instruction is duplicative of other instructions and will only serve to confuse the jury.

**24. <u>Plaintiffs' Contested Charge: Issues on Principal's Duties</u>**

A principal required by contract or otherwise by law to protect another cannot avoid liability by delegating performance of the duty, whether or not the delegate is an agent.

<u>**AUTHORITY**</u>:

Restatement (Third) Of Agency § 7.06 (2006) (Failure in Performance of Principal's Duty of Protection);

<u>**DEFENDANT'S OBJECTION:**</u>

American General objects to the inclusion of this instruction because it does not accurately state Florida law. Additionally, the only authority Plaintiffs cite for this instruction is the Restatement (Third) of Agency, even though no Florida state court has ever adopted or favorably cited § 7.06. Moreover, American General objects that this provision of the Restatement generally applies to common carriers and is irrelevant to the facts alleged in Plaintiffs' Second Amended Complaint, where Plaintiffs have already agreed that there is no "contract" requiring American General to "protect another."  The instruction will therefore only serve to confuse the jury.

**25. Plaintiffs' Contested Charge: RICO — Conduct of or Participation in an Enterprise Through a Pattern of Racketeering Activity** § 895.03(3), Fla.Stat. (Modified)

To prove the crime of Unlawfully Conducting or Participating in an Enterprise, Plaintiffs must prove the following three elements by a preponderance of the evidence:

    **1.**    American General was associated with an enterprise.

    *2.*    American General conducted or participated in, directly or indirectly, such enterprise by engaging in at least two of the following incidents: Mail Fraud in violation of 18 U.S.C. § 1341; and Wire Fraud in violation of 18 U.S.C. § 1343.

    **3.**    Of those incidents in which American General was engaged at least two of them had the same or similar intents, results, accomplices, victims, methods of commission, or were interrelated by distinguishing characteristics and were not isolated incidents.

An "enterprise" is an ongoing organization, formal or informal, that both functions as a continuing unit and has a common purpose of engaging in a course of conduct.

**AUTHORITY:** Florida Standard Jury Instructions in Criminal Cases, 26.7 (Modified).[3]

**DEFENDANT'S OBJECTION:**

American General objects to the inclusion of any instruction regarding RICO or Aiding and Abetting, as those claims were dismissed with prejudice and do not form part of the active litigation. Doc. 107.

---

[3] To the extent this Court grants Plaintiffs' Motion for Reconsideration of Order Granting Motion to Dismiss RICO Claims [Dkt. 110], Plaintiffs' have included instructions related to their claims for violation of Florida's Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I) and aiding and abetting (Count VI).

**26.  Plaintiffs' Contested Charge: Mail Fraud, 18 U.S.C. § 1341 (Eleventh Circuit Criminal Pattern Jury Instruction O50.1—Modified)**

As predicate acts to the RICO violation, Plaintiffs have alleged that Defendant acted in violation of the mail fraud statute, of Section 1341 of Title 18 of the United States Code.  This statute makes it a Federal crime to use the United States mail or transmit something by private or commercial interstate carrier in carrying out a scheme to defraud someone.  In order for Defendant to be found to have violated that statute, plaintiffs must prove each of the following elements by a preponderance of the evidence:

> (1) the Defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false or fraudulent pretenses, representations, or promises;
>
> (2) the false or fraudulent pretenses, representations, or promises were about a material fact;
>
> (3) the Defendant intended to defraud someone; and
>
> (4) the Defendant used [the United States Postal Service by mailing or by causing to be mailed] [a private or commercial interstate carrier by depositing or causing to be deposited with the carrier] something meant to help carry out the scheme to defraud.

[A "private or commercial interstate carrier" includes any business that transmits, carries, or delivers items from one state to another. It doesn't matter whether the message or item actually moves from one state to another as long as the message or item is delivered to the carrier.]

A "scheme to defraud" includes any plan or course of action intended to deceive or cheat someone out of money or property using false or fraudulent pretenses, representations, or promises.

A statement or representation is "false" or "fraudulent" if it is about a material fact, it is made with intent to defraud, and the speaker either knows it is untrue or makes it with reckless

indifference to the truth. It may be false or fraudulent if it is made with the intent to defraud and is a half-truth or effectively conceals a material fact.

A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is "material" if it has the capacity or natural tendency to influence a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else.

Plaintiffs do not have to prove all the details about the precise nature and purpose of the scheme or that the material [mailed] [deposited with an interstate carrier] was itself false or fraudulent. It also does not have to prove that the use of [the mail] [the interstate carrier] was intended as the specific or exclusive means carrying out the fraud, or that the Defendant did the actual [mailing] [depositing]. It doesn't even have to prove that anyone was actually defrauded.

To "cause" [the mail] [an interstate carrier] to be used is to do an act knowing that the use of [the mail] [the carrier] will usually follow in the ordinary course of business or where that use can reasonably be foreseen.

Each separate use of [the mail] [an interstate carrier] as part of the scheme to defraud is a separate crime.

**AUTHORITY:** (Eleventh Circuit Criminal Pattern Jury Instruction O50.1—Modified) [4]

---

[4] To the extent this Court grants Plaintiffs' Motion for Reconsideration of Order Granting Motion to Dismiss RICO Claims [Dkt. 110], Plaintiffs' have included instructions related to their claims for violation of Florida's Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I) and aiding and abetting (Count VI).

**<u>DEFENDANT'S OBJECTION:</u>**

American General objects to the inclusion of any instruction regarding RICO or Aiding and Abetting, as those claims were dismissed with prejudice and do not form part of the active litigation. Doc. 107.

**27. <u>Plaintiffs' Contested Charge: Wire Fraud, 18 U.S.C. § 1343</u>** (Eleventh Circuit
<u>Criminal Pattern Jury Instruction O51—Modified</u>)

As predicate acts to the RICO violation, Plaintiffs have alleged that American General
acted in violation of the wire fraud statute, of Section 1343 of Title 18 of the United States Code.
This statute makes it a Federal crime to use interstate wire, radio, or television communications
to carry out a scheme to defraud someone else. In order for American General to be found to
have violated that statute, plaintiffs must prove each of the following elements by a
preponderance of the evidence:

(1) American General knowingly devised or participated in a scheme to defraud,
or to obtain money or property by using false pretenses, representations, or
promises;

(2) the false pretenses, representations, or promises were about a material fact;

(3) American General acted with the intent to defraud; and

(4) American General transmitted or caused to be transmitted by wire, radio,
television, or some communication in interstate commerce to help carry out
the scheme to defraud.

The term "scheme to defraud" includes any plan or course of action intended to deceive
or cheat someone out of money or property by using false or fraudulent pretenses,
representations, or promises.

A statement or representation is "false" or "fraudulent" if it is about a material fact that
the speaker knows is untrue or makes with reckless indifference to the truth, and makes with the
intent to defraud. A statement or representation may be "false" or "fraudulent" when it is a half-
truth, or effectively conceals a material fact, and is made with the intent to defraud.

A "material fact" is an important fact that a reasonable person would use to decide
whether to do or not do something. A fact is "material" if it has the capacity or natural tendency

to influence a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

The "intent to defraud" is the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else.

Plaintiffs do not have to prove all the details alleged in the indictment about the precise nature and purpose of the scheme. It also doesn't have to prove that the material transmitted by interstate wire was itself false or fraudulent; or that using the wire was intended as the specific or exclusive means of carrying out the alleged fraud; or that American General personally made the transmission over the wire. And it doesn't have to prove that the alleged scheme actually succeeded in defrauding anyone.

To "use" interstate wire communications is to act so that something would normally be sent through wire communications in the normal course of business.

Each separate use of the interstate wire communications as part of the scheme to defraud is a separate crime.

**AUTHORITY:**  (Eleventh Circuit Criminal Pattern Jury Instruction O51—Modified) [5]

**DEFENDANT'S OBJECTION:**

American General objects to the inclusion of any instruction regarding RICO or Aiding and Abetting, as those claims were dismissed with prejudice and do not form part of the active litigation. Doc. 107.

---

[5] To the extent this Court grants Plaintiffs' Motion for Reconsideration of Order Granting Motion to Dismiss RICO Claims [Dkt. 110], Plaintiffs' have included instructions related to their claims for violation of Florida's Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I) and aiding and abetting (Count VI).

**28. <u>Issues on Plaintiffs' Claim—Misleading Advertising</u>**

Plaintiffs claim that American General violated Florida's Misleading Advertising Law. You must separately analyze the evidence as to each Plaintiff to determine whether each Plaintiff established his/her/its claim. For a particular Plaintiff to establish this claim, each Plaintiff must prove by a preponderance of the evidence that:

(1) American General made a misrepresentation of a material fact,

(2) American General knew or should have known the falsity of the statement,

(3) American General intended to induce the Plaintiff to rely on the false statement and act on it,

(4) Plaintiff relied on that statement to his/her/its detriment;

(5) the statement was made within publicly disseminated advertising; and

(6) The statement was <u>not</u> made in connection with a sale of insurance.

Regarding the last element, if you find that the statement <u>was</u> made in connection with sales of insurance, then you must find against the Plaintiff and for American General on the misleading advertising claim.

**<u>AUTHORITY:</u>**

*Rollins, Inc. v. Butland*, 951 So. 2d 860, 877 (Fla. 2d DCA 2006); *S.H. Inv. & Dev. Corp. v. Kincaid*, 495 So. 2d 768, 770 (Fla. 5th DCA 1986); *Jackson v. Shakespeare Found., Inc*., 108 So. 3d 587, 595 (Fla. 2013); F.S.A. § 817.47 (insurance advertising exempt).

**29.  Plaintiffs' Contested Charge: Issues on Plaintiffs' Claim—Fraud By Concealment**

Plaintiffs claim that American General committed Fraud by Concealment of the fact that the VEBA plans were listed transactions. You must separately analyze the evidence as to each Plaintiff to determine whether that Plaintiff established his/her/its claim. For a particular Plaintiff to establish this claim, the Plaintiff must prove by a preponderance of the evidence that

(1) American General concealed or failed to disclose a material fact;

(2) American General knew or should have known the material fact should be disclosed;

(3) American General knew its concealment of or failure to disclose the material fact would induce the Plaintiff to act;

(4) American General had a duty to disclose the material fact; and

(5) the Plaintiff detrimentally relied on the misinformation.

A material fact is one that is of such importance that the Plaintiff would not have entered into the transaction or acted, but for the false statement.

Plaintiffs claim that American General had a duty to disclose material information to Plaintiffs.  A duty to disclose may arise of if a defendant states "half-truths," which are representations that state the truth only so far as it goes, while omitting critical qualifying information.  A duty to disclose may also be found where one party has superior knowledge and the other party does not have equal opportunity to become apprised of the fact.

**AUTHORITY:**

**Elements of claim:** *R.J. Reynolds Tobacco Co. v. Martin,* 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010).

**Material fact**: Florida Standard Jury Instructions in Civil Cases No. 409.5.

**Duty to disclose:**  *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2000, 195 L. Ed. 2d 348 (2016) ("half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations"); *id*. at n. 3

("This rule recurs throughout the common law. In tort law, for example, 'if the defendant does speak, he must disclose enough to prevent his words from being misleading'"); *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1359–60 (11th Cir. 2004) (recognizing a duty to inform customers of certain information where failure to do so would cause the customer to be misled); Rest.2d Torts § 529 (1977) ("A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation"); *Ramel v. Chasebrook Const. Co*., 135 So. 2d 876, 882 (Fla. 2d DCA 1961) (there is a duty to disclose "where the other party does not have equal opportunity to become apprised of the fact."); *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co., Inc.,* 899 F.2d 1045, 1059 (11th Cir. 1990) (holding that insurer, with greater knowledge of insurance information, was not dealing at arms length with its client and had duty to disclose).

## DEFENDANT'S OBJECTION:

American General objects to Plaintiffs' articulation of the elements of Fraud by Concealment as incomplete. First, it fails to instruct the jury that only misrepresentations of fact—and not misrepresentations of opinion, law, or future events—can ground a fraudulent concealment claim.*R.J. Reynolds Tobacco Co. v. Martin,* 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010); Florida Standard Jury Instructions in Civil Cases No. 409.5 (material fact); *Chino Elec., Inc. v. U.S. Fid. & Guar. Co.*, 578 So. 2d 320, 323 (Fla. Dist. Ct. App. 1991) ("It is, of course, well settled in Florida that in order to be actionable a fraudulent misrepresentation must be of a material fact, rather than a mere opinion or a misrepresentation of law.").

Additionally, Plaintiffs' instruction fails wrongly implies the circumstances under which American General owed a duty of disclosure to Plaintiffs. *Corwin v. Cristal Mizner's Pres. Ltd. P'ship*, 812 So. 2d 534, 536 (Fla. Dist. Ct. App. 2002) ("since the parties were bargaining at arms-length and there was no evidence of any agreement to make full disclosures, there was no duty on Corwin's part to" make the disclosures plaintiffs claim).

Finally, Plaintiffs' instruction fails to include an appropriate instruction that Plaintiffs' reliance must have been justified. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (requirement of justifiable reliance applies to fraudulent omission claims as well as affirmative fraudulent misrepresentation claims).

**30. <u>Defendant's Contested Charge:  Issues on Plaintiffs' Claim—Fraud By Concealment</u>**

Plaintiffs claim that Defendant committed Fraud by Concealment of the fact that the VEBA plans were unlawful. You must separately analyze the evidence as to each Plaintiff to determine whether that Plaintiff established his/her/its claim. For a particular Plaintiff to establish this claim, the Plaintiff must prove by a preponderance of the evidence that

(1) Defendant concealed or failed to disclose a material fact;

(2) Defendant knew or should have known the material fact should be disclosed;

(3) Defendant knew its concealment of or failure to disclose the material fact would induce the Plaintiff to act;

(4) Defendant had a duty to disclose the material fact;

(5) the Plaintiff detrimentally relied on the misinformation; and

(6) that the Plaintiff's reliance was justified.

Regarding the first element: because the Plaintiffs claim that American General failed to disclose that the VEBA Plans were unlawful or were a Listed Transaction, Plaintiffs must prove that the VEBA Plans were, in fact, unlawful or were a Listed Transaction at the time each Plaintiff decided to participate in the plan and that American General knew that the plan was unlawful or was a Listed Transaction at that time.

A misrepresentation must be about a material fact; a misrepresentation about a matter of law, a prediction of a future event, or the Defendant's opinion does not satisfy the elements. A material fact is one that is of such importance that the Plaintiff would not have acted, but for the false statement.

There is no duty of disclosure in an arms-length transaction. In order to find that American General owed a duty to any Plaintiff, you must find that American General assumed a duty to disclose.

## AUTHORITY:

*Misrepresentations must be of fact; not law, opinion, or future event. R.J. Reynolds Tobacco Co. v. Martin,* 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010); Florida Standard Jury Instructions in Civil Cases No. 409.5 (material fact); *Chino Elec., Inc. v. U.S. Fid. & Guar. Co.*, 578 So. 2d 320, 323 (Fla. Dist. Ct. App. 1991) ("It is, of course, well settled in Florida that in order to be actionable a fraudulent misrepresentation must be of a material fact, rather than a mere opinion or a misrepresentation of law."); *Corwin v. Cristal Mizner's Pres. Ltd. P'ship*, 812 So. 2d 534, 536 (Fla. Dist. Ct. App. 2002) ("since the parties were bargaining at arms-length and there was no evidence of any agreement to make full disclosures, there was no duty on Corwin's part to" make the disclosures plaintiffs claim).

*Justifiable Reliance. Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (requirement of justifiable reliance applies to fraudulent omission claims as well as affirmative fraudulent misrepresentation claims).

## PLAINTIFFS' OBJECTION:

Plaintiffs do not object to American General's stated elements of Fraud by Concealment. Plaintiffs object to American General's proposed instructions in the three heavily slanted paragraphs following the elements. Plaintiffs are not required to prove that the VEBA Plans were unlawful. Rather, Plaintiffs allege that American General failed to disclose that the VEBA Plans were a listed transaction.

Plaintiffs object to American General's statement that a misrepresentation of material fact cannot concern an opinion or a future event. Under Florida law, opinions of the future are actionable "where there has been some artifice or trick employed by the representor." *Vokes v. Arthur Murray, Inc.*, 212 So. 2d 906, 908-909 (Fla. 2d DCA 1968). (statements of opinion may form basis for an action in fraud when there has been "some artifice or trick employed"); *Amazon v. Davidson,* 390 So.2d 383, 385-86 (Fla. 5th DCA 1980) (permitting representation that plaintiff "would make a substantial amount of money" to form basis for action in fraud).

Plaintiffs object to American General's proposed instruction that there is no duty to disclose in an "arms length transaction" because this is an undefined term that will confuse the jury. Moreover, it does not sufficiently explain that when one party has superior knowledge or expertise they are not dealing at arms length and there is a duty to disclose material information. *See First Alabama Bank of Montgomery, N.A. v. First State Ins. Co., Inc.*, 899 F.2d 1045, 1059 (11th Cir. 1990) (holding that insurer, with greater knowledge of insurance information, was not dealing at arms length with its client and had duty to disclose); *Ramel v. Chasebrook Const. Co.*,

135 So. 2d 876, 882 (Fla. 2d DCA 1961) (duty to disclose "where the other party does not have equal opportunity to become apprised of the fact."

**31. <u>Issue on Plaintiffs' Claim--Legal Cause</u>**

*a.*      *Legal cause generally:*

Misrepresentation of a material fact is a legal cause of loss, injury, or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury, or damage, so that it can reasonably be said that, but for the misrepresentation, the loss, injury, or damage would not have occurred.

*b.*      *Concurring cause:*

In order to be regarded as a legal cause of loss, injury, or damage misrepresentation of a material fact need not be the only cause. Misrepresentation of a material fact may be a legal cause of loss, injury, or damage even though it operates in combination with the act of another if the misrepresentation contributes substantially to producing such loss, injury, or damage.

*c.*      *Intervening cause:*

Misrepresentation of a material fact may also be a legal cause of loss, injury, or damage even though it operates in combination with the act of another occurring after the misrepresentation occurs if the resulting loss, injury, or damage was a reasonably foreseeable consequence of the misrepresentation and the misrepresentation contributes substantially to producing it.

**AUTHORITY:** Florida Standard Jury Instructions in Civil Cases No. 409.6

**32. Plaintiffs' Contested Charge: Issues on Plaintiffs' Claim—Common Law Fraud**

Plaintiffs claim that American General committed Common Law Fraud.  To establish this claim, Plaintiffs must prove by a preponderance of the evidence that:

(1)     American General made a misrepresentation of a material fact,

(2)     American General knew or should have known the falsity of the statement,

(3)     American General intended to induce the Plaintiffs to rely on the false statement and act on it, and

(4)     Plaintiffs relied on that statement to his, her, or its detriment.

## AUTHORITY:

*Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 595 (Fla. 2013).

## DEFENDANT'S OBJECTION:

American General objects that this instruction is incomplete because it fails to appropriately instruct the jury that statements of law, opinion, or predictions about future events cannot form the basis for a fraudulent misrepresentation claim under Florida law.  Statements of opinion, legal propositions, and predictions of future events are not actionable as fraud. *See Baker v. United Services Auto. Ass'n*, 661 So. 2d 128, 131 (Fla. 1st DCA 1995) (A misrepresentation, to be actionable, must be one of fact rather than opinion.) *Amazon; Thor Bear, Inc. v. Crocker Mizner Park Inc.,* 648 So.2d 168 (Fla. 4th DCA 1994) (claim of fraudulent misrepresentation is not actionable if premised on a mere opinion rather than a material fact); *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) ("An action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact."); *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994), *reh'g denied, clarification granted* (Apr. 4, 1995) ("Participants in a normal business transaction are not entitled to rely upon such 'ephemeral matters' as opinions, judgments or legal views expressed by an opposing party.").

Plaintiffs' instruction is also incomplete in its failure to instruct the jury that the Plaintiff's reliance must be "justified." _*Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 311 (Fla. 1st DCA 2011) ("Under Florida law, even though **justifiable reliance is required**, a recipient of information does not have to investigate every piece of information furnished, but instead is responsible for investigating that information which 'a reasonable person in the position of the recipient would be expected to investigate.'" (emphasis added)); *Posner & Sons, Inc. v. Transcapital Bank*, 65 So. 3d 1193, 1197 (Fla. 4th DCA 2011) ("The question, to refer back to this Court's decision in *Besett,* is whether the recipient of the

misrepresentation is justified in relying upon its truth. For if the recipient knows that it [the statement] is false or its falsity is obvious to him, his reliance is improper, and there can be no cause of action for fraudulent misrepresentation."); *Nourachi v. First Am. Title Ins. Co.*, 44 So. 3d 602, 617 (Fla. 5th DCA 2010) ("Where the allegedly defrauded party is sophisticated, the lack of **justifiable reliance** is especially compelling. *See Wasser v. Sasoni,* 652 So.2d 411, 413 (Fla. 3d DCA 1995) (sophisticated party not justified in relying on fact available to party through reasonable diligence); *see also Nicholson v. Ariko,* 539 So.2d 1141, 1142 (Fla. 5th DCA 1989) (party may not reasonably rely upon interpretation of legal document to support claim for fraud).").

American General proposes an alternate instruction below that includes these elements.

50

### 33. **Defendant's Contested Charge: Fraud**

Plaintiffs claim that Defendant committed fraud by affirmative misrepresentation. You must separately analyze the evidence as to each Plaintiff to determine whether that Plaintiff established his/her/its claim. The issues for you to decide on each Plaintiff's claim for fraudulent misrepresentation are as follows.

First, whether American General intentionally made a false statement concerning a material fact;

Second, whether the representation was one of fact. A representation of a person's opinion, a representation about the law, or a prediction about future events do not qualify as representations of fact.

Third, whether American General knew the statement was false when it made it, or made the statement knowing that it did not know whether it was true or false;

Fourth, whether American General intended for a Plaintiff to rely on the false statement;

Fifth, whether the Plaintiff relied on the false statement; and,

Sixth, whether the Plaintiff justifiably relied on American General's misrepresentation of fact. Not just any reliance will do; the reliance must have been justifiable. Reliance is not justified for any Plaintiff that signed disclosures stating that they would not rely on American General or if the Plaintiff otherwise knew that the representation was false.  Reliance is not justified for any Plaintiff that held documents or had information that contradicted what that Plaintiff relied upon.

Seventh, whether the false statement was a legal cause of loss or injury to the Plaintiff.

To establish the Plaintiff's claim for fraudulent misrepresentation, the Plaintiff must prove all of these elements.

### **AUTHORITY:**

*Generally: Adopted from Pattern Jury Instructions § 409.7 ISSUES ON PLAINTIFF'S CLAIM — FRAUDULENT MISREPRESENTATION.*

**Element Two:** Statements of opinion, legal propositions, and predictions of future events are not actionable as fraud. *See Baker v. United Services Auto. Ass'n,* 661 So. 2d 128, 131 (Fla. 1st DCA 1995) (A misrepresentation, to be actionable, must be one of fact rather than opinion.) *Amazon; Thor Bear, Inc. v. Crocker Mizner Park Inc.,* 648 So.2d 168 (Fla. 4th DCA 1994) (claim of fraudulent misrepresentation is not actionable if premised on a mere opinion rather than a material fact); *Mejia v. Jurich,* 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) ("An action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact."); *Thor Bear, Inc. v.*

*Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994), *reh'g denied, clarification granted* (Apr. 4, 1995) ("Participants in a normal business transaction are not entitled to rely upon such 'ephemeral matters' as opinions, judgments or legal views expressed by an opposing party.").

*Element Six: Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 311 (Fla. 1st DCA 2011) ("Under Florida law, even though **justifiable reliance is required**, a recipient of information does not have to investigate every piece of information furnished, but instead is responsible for investigating that information which 'a reasonable person in the position of the recipient would be expected to investigate.'" (emphasis added)); *Posner & Sons, Inc. v. Transcapital Bank*, 65 So. 3d 1193, 1197 (Fla. 4th DCA 2011) ("The question, to refer back to this Court's decision in *Besett*, is whether the recipient of the misrepresentation is justified in relying upon its truth. For if the recipient knows that it [the statement] is false or its falsity is obvious to him, his reliance is improper, and there can be no cause of action for fraudulent misrepresentation."); *Nourachi v. First Am. Title Ins. Co.*, 44 So. 3d 602, 617 (Fla. 5th DCA 2010) ("Where the allegedly defrauded party is sophisticated, the lack of **justifiable reliance** is especially compelling. *See Wasser v. Sasoni,* 652 So.2d 411, 413 (Fla. 3d DCA 1995) (sophisticated party not justified in relying on fact available to party through reasonable diligence); *see also Nicholson v. Ariko,* 539 So.2d 1141, 1142 (Fla. 5th DCA 1989) (party may not reasonably rely upon interpretation of legal document to support claim for fraud).")

## PLAINTIFFS' OBJECTION:

Plaintiffs object to American General's proposed instruction of the second element, that opinions, representations of the law, and predictions of future events are not actionable as fraud. Under Florida law, these statements are actionable "where there has been some artifice or trick employed by the representor." *Vokes v. Arthur Murray, Inc.*, 212 So. 2d 906, 908-909 (Fla. 2d DCA 1968). (statements of opinion may form basis for an action in fraud when there has been "some artifice or trick employed"); *Amazon v. Davidson,* 390 So.2d 383, 385-86 (Fla. 5th DCA 1980) (permitting representation that plaintiff "would make a substantial amount of money" to form basis for action in fraud).

Plaintiffs object to American General's proposed instruction of the sixth element, as heavily slanted and legally incorrect. Plaintiffs are merely required to prove reliance for a fraud claim. "Justifiable" reliance is not a necessary element of fraudulent misrepresentation. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). *See also, Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 81 (Fla. 5th DCA 2016) (acknowledging Butler's proposition that "justifiable" reliance is not an element of a claim for fraud). Moreover, the disclosures do not negate Plaintiffs' reliance on American General's misrepresentations. *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1028 (11th Cir. 2017) (mere existence of non-reliance provision in contract is insufficient to preclude fraud claim as a matter of law).

**34. <u>Plaintiffs' Contested Claim: Issues on Plaintiffs' Claim—Aiding and Abetting</u>**

Plaintiffs claim that American General aided and abetted its agents' breach of fiduciary duty. To establish this claim, Plaintiffs must prove by a preponderance of the evidence that:

 (1) American General's agents owed Plaintiffs a fiduciary duty;

(2) American General's agents breached this fiduciary duty;

(3) American General had knowledge of the breach; and

(4) American General provided substantial assistance or encouragement of the wrongdoing.

**<u>AUTHORITY:</u>**

*Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1350 (M.D. Fla. 2014)<u>;</u> *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). [6]

**<u>DEFENDANT'S OBJECTION:</u>**

American General objects to the inclusion of this instruction as the claim for Aiding and Abetting has been dismissed with prejudice by the Court and no longer forms part of this litigation. *See* Doc. 107.

---

[6] To the extent this Court grants Plaintiffs' Motion for Reconsideration of Order Granting Motion to Dismiss RICO Claims [Dkt. 110], Plaintiffs' have included instructions related to their claims for <u>violation of Florida's Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I) and aiding and abetting (Count VI).</u>

**35. <u>Defendant's Contested Charge: Fiduciary Duty</u>**

Plaintiffs next claim that American General breached a fiduciary duty that it owed to them. You must separately analyze the evidence as to each Plaintiff to determine whether that Plaintiff established his/her/its claim. To succeed on this claim, the Plaintiff must show that:

(a)  American General owed the Plaintiff in question a fiduciary duty;

(b)  American General breached that duty; and

(c)  That breach is the proximate cause of the Plaintiff's damages.

A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relationship. For example, a lawyer or an accountant is usually a fiduciary to his or her client.

An insurance company usually does not have a fiduciary duty to its insureds. However, Plaintiffs claim that the duty exists here because American General had a "special relationship" with Plaintiffs at the time that the Plaintiffs allege the information should have been given to them.

A special relationship can create a duty if American General went beyond its existing contractual duties (if any) to develop a relationship of confidence with the Plaintiff. In evaluating whether American General developed a special relationship, you should evaluate (1) representations by American General about its expertise; (2) the length and depth of the relationship; (3) the extent of American General's involvement in the client's decision making about its insurance needs; (4) information volunteered by American General about the client's insurance needs; and (5) payment of additional compensation for advisory services. Importantly, the fact that any Plaintiff placed trust or confidence in American General does not create a special relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of American General.

**AUTHORITIES:**

**Generally.** *Gracey v. Eaker*, 837 So. 2d 348, 353–54 (Fla. 2002) ("The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages. . . . "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation.") (citation omitted).")

*Smith v. Casey*, 1:12-CV-23795-UU, 2014 WL 11878422, at *7 (S.D. Fla. Oct. 29, 2014) ("Whether or not a contract actually existed between the parties, there are no facts alleged showing a special relationship between the parties where Sunshine Defendants went beyond their contractual duties and developed a fiduciary relationship with Smith. As such, a claim for breach of fiduciary duty cannot survive. *Bruhl v. Price WaterhouseCoopers Int'l*, No. 03–23044–CIV, 2008 WL 899250, at *3 (S.D. Fla. Mar. 31, 2008) (dismissing breach of fiduciary duty claim where there were no allegations that defendant 'stepped out of its contractual role' or 'developed a special relationship and undertook a duty beyond those duties already assumed' under any contract).").

Factors to consider in evaluating a "special relationship": "(1) representations by the broker about its expertise; (2) representations by the broker about the breadth of the coverage obtained; (3) the length and depth of the relationship; (4) the extent of the broker's involvement in the client's decision making about its insurance needs; (5) information volunteered by the broker about the client's insurance needs; and (6) payment of additional compensation for advisory services." *Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1281 (S.D. Fla. 2014).

**Party assuming duty must acknowledge or accept duty.** "The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005).

**36. <u>Plaintiff's Contested Charge: Fiduciary Duty</u>**

Plaintiffs next claim that American General breached a fiduciary duty that it owed to them. You must separately analyze the evidence as to each Plaintiff to determine whether that Plaintiff established his/her/its claim. To succeed on this claim, the Plaintiff must show that:

(a)  American General owed the Plaintiff in question a fiduciary duty;

(b)  American General breached that duty; and

(c)  That breach is the proximate cause of the Plaintiff's damages.

A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relationship. For example, a lawyer or an accountant is usually a fiduciary to his or her client.

A fiduciary duty may be found when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party.

An insurer may owe a fiduciary duty to insureds where they encourage and engage in a special relationship.  Plaintiffs claim that the duty exists here because American General had a "special relationship" with Plaintiffsdue to their superior knowledge and affirmative representations. A special relationship can create a duty if American General went beyond its existing contractual duties (if any) to develop a relationship of confidence with the Plaintiff. Importantly, the fact that any Plaintiff placed trust or confidence in American General does not create a special relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of American General.


**<u>DEFENDANT'S OBJECTION:</u>**

American General Objects to this fiduciary duty instruction as incomplete in its definition of "special relationship" because it does not identify the factors the jury should consider, as American General's explanation above does.  The instruction is also misleading as to Florida law because it suggests that an insurer may owe an insured a fiduciary duty which is generally not permitted under Florida law outside the claims' handling context, as argued in American General's pending summary judgment motion. If the claim is permitted, American General's instruction above is a better representation of Florida law applicable to this case.

**37. Plaintiffs' Contested Charge:  Issues on Plaintiffs' Claim—Liability for Causing an Agent to Violate a Duty to His Principal**

A third person cannot receive the benefits of a transaction through an agent and then refute the agent's right to act. A person who intentionally causes, or assists a servant or other agent to violate a duty to the principal is subject to liability in tort for the harm he or she causes the principal, or in an action for restitution for any profit he or she derived from the transaction. Thus, where a third party deals with another's agent with knowledge that the agent is acting in violation of his or fiduciary obligation to the principal, the third party may be held jointly liable with the agent for secret profits.

Under Florida law, where a third party interferes with the agent of another with knowledge that the agent is violating his obligations to the principal, the third party may be held jointly liable with the agent for the secret profits; that joint liability applies unless the third party reasonably believes that the other principal acquiesced in the double employment.

**AUTHORITY:**   *Waddell v. Donelly*, 189 So. 650, 650 (1939) ("They could not in one breath receive benefits from him as an agent and in the next refute his right to act."); *Phillips Chemical Co. v. Morgan*, 440 So.2d 1292, 1295 (Fla. 3d DCA 1983) ("A person who intentionally causes a servant or other agent to violate a duty to the principal is subject to liability in tort for the harm he has caused the principal or in a restitutional action for any profit he derived from the transaction."); *Martin Co. v. Commercial Chemists, Inc*., 213 So.2d 477, 480 (Fla. 4th DCA 1968) ("Where a third party (in this case Commercial Chemists) deals with another's agent (in this case Dobar) with knowledge that the agent is acting in violation of his fiduciary obligation to his principal (here Martin) the third party may be held jointly liable with the agent for secret profits."); *ITT Community Development Corp. v. Barton*, 457 F.Supp. 224, 230 (M.D.Fla. 1978) ("equity will raise a constructive trust and compel restoration where one, through actual fraud, abuse of confidence reposed and accepted, or through other questionable means, gains something for himself which in equity and good conscience he should not be permitted to hold"); *JDI Holdings, LLC v. Jet Management, Inc*., 732 F.Supp.2d 1205 (N.D. Fla. 2010) (imposing a constructive trust). Fla. Jur. 2d – Agency § 106 (Duty and liability of third person to principal); Restatement of the Law – Agency § 312 (Intentionally Causing or Assisting Agent to Violate Duty), *citing Schein v. Chasen*, 313 So.2d 739, 745 (Fla. 1975) (where defendants conspired with agent to breach his duty); and *Phillips Chemical Co. v. Morgan*, 440 So.2d 1292 (Fla. 3d DCA 1983) (third party liable to principal); Restatement (2d) of Agency § 313 (common agents transactions voidable); Restatement of Restitution §§ 134 – 138; Restatement of Torts §§ 813 – 816.

**<u>DEFENDANT'S OBJECTION:</u>**

American General objects to this instruction as confusing and not applicable in this case. Plaintiffs have never made an allegation that any purported agent in this case "violated a duty to his principal." Further, it is unclear who or what relationship the principal and agent references in this instruction refer to. Additionally, the reference to "jointly liable" with the agent belies the instruction's inapplicability, since American General is the only Defendant in the case and there is no allegation of joint liability with any other party.  The instruction therefore contradicts—or, at least, is unsupported by—Plaintiffs' live pleading.

**38. <u>Plaintiffs' Contested Charge: Issues on Plaintiffs' Claim—Commercial Bribery</u>**

"Bribe" is defined as "a price, reward, gift, or favor bestowed or promised with a view to pervert the judgment of or influence the action of a person in a position of trust."

A person who intentionally causes a servant or other agent to violate a duty to the principal is subject to liability in tort for the harm he has caused the principal or in a restitutional action for any profit he derived from the transaction.

## <u>AUTHORITY:</u>

Black's Law Dictionary (8th ed. 2004); Restatement (Second) of Agency § 312 (1958); *Corporacion Peruana de Aeropuertos y Aviacion Comercial v. Boy*, 180 So.2d 503 (Fla. 2d DCA 1965), *as amended on denial of rehearings*; *Martin Company v. Commercial Chemists, Inc*., 213 So.2d 477, 480 (Fla. 4th DCA 1968), *cert. denied*, 225 So.2d 523 (Fla. 1969) (where a third party deals with another's agent with knowledge that the agent is acting in violation of his fiduciary obligation to his principal the third party may be held jointly liable with the agent for secret profits); *Phillips Chemical Co. v. Morgan*, 440 So.2d 1292, 1295 (Fla. 3d DCA 1983), *petition for rev. denied*, 450 So.2d 486 (Fla. 1984).

## <u>DEFENDANT'S OBJECTION:</u>

Plaintiffs have not brought a claim for commercial bribery nor pleaded—let alone developed in discovery—any facts that would implicate it. Indeed, the word "bribery" does not appear anywhere in Plaintiffs' Second Amended Complaint. *See* Doc. 54. To the extent bribery is a predicate act Plaintiffs intend to prove in support of their RICO claims, those RICO claims have been dismissed with prejudice. *See* Doc. 107.

Moreover, the instruction is unclear and confusing as to how it can be applied in Plaintiffs' favor. If American General is, as Plaintiffs have alleged, the principal, then what third party has caused the alleged agents to violate their duty to American General? The instruction, as written, is unworkable.

**39. <u>Constructive Fraud</u>**

Plaintiffs' next claim is for "constructive fraud." You must separately analyze the evidence as to each Plaintiff to determine whether that Plaintiff established his/her/its claim. To prove this claim, the Plaintiff must prove all of the following:

First, that American General owed the Plaintiff a fiduciary duty. This is the same kind of duty we just described above on the fiduciary duty claim.

Second, that American General abused or took an unconscionable advantage of the fiduciary duty; and

Third, that Plaintiff was harmed by American General abusing or taking an unconscionable advantage of the fiduciary duty.

<u>**AUTHORITY:**</u>

*Generally. Beers v. Beers*, 724 So. 2d 109, 116 (Fla. 5th DCA 1998) ("Constructive fraud is the term typically applied where a duty under a confidential or fiduciary relationship has been abused, or where an unconscionable advantage has been taken.").

**40. <u>Plaintiff's Contested Charge: Negligent Misrepresentation</u>**

Plaintiffs next assert a negligent misrepresentation claim against American General. You must separately analyze the evidence as to each Plaintiff to determine whether that Plaintiff established his/her/its claim. The issues for you to decide on each Plaintiff's claim for negligent misrepresentation are:

First, whether American General made a statement concerning a material fact that it believed to be true but which was in fact false;

Second, whether American General was negligent in making the statement because it should have known the statement was false;

Third, whether in making the statement, American General intended or expected that another would rely on the statement;

Fourth, whether Plaintiff justifiably relied on the false statement; and, if so,

Fifth, whether the false statement was a legal cause of loss, injury, or damage to Plaintiff.

**<u>AUTHORITY:</u>**

Florida Standard Jury Instructions in Civil Cases No. 409.8

**<u>DEFENDANT'S OBJECTION:</u>**

American General objects to this instruction as incomplete and proposes an additional instruction that statements of opinion, legal propositions, and predictions of future events are not actionable. *See Baker v. United Services Auto. Ass'n*, 661 So. 2d 128, 131 (Fla. 1st DCA 1995) (A misrepresentation, to be actionable, must be one of fact rather than opinion.) *Amazon; Thor Bear, Inc. v. Crocker Mizner Park Inc.,* 648 So.2d 168 (Fla. 4th DCA 1994) (claim of fraudulent misrepresentation is not actionable if premised on a mere opinion rather than a material fact); *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) ("An action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact."); *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994), *reh'g denied, clarification granted* (Apr. 4, 1995) ("Participants in a normal business transaction are not entitled to rely upon such 'ephemeral matters' as opinions, judgments or legal views expressed by an opposing party.").

**41. Defendant's Contested Charge: Negligent Misrepresentation**

Plaintiffs next assert a negligent misrepresentation claim against American General. You must separately analyze the evidence as to each Plaintiff to determine whether that Plaintiff established his/her/its claim. The issues for you to decide on each Plaintiff's claim for negligent misrepresentation are:

First, whether American General made a statement concerning a material fact that it believed to be true but which was in fact false;

Second, whether American General was negligent in making the statement because it should have known the statement was false;

Third, whether in making the statement, American General intended or expected that another would rely on the statement;

Fourth, whether Plaintiff justifiably relied on the false statement; and, if so,

Fifth, whether the false statement was a legal cause of loss, injury, or damage to Plaintiff.

Again, in order to be a misrepresentation of a material "fact," the statement cannot be one of opinion, law, or a prediction of a future event.

**AUTHORITY:**

Florida Standard Jury Instructions in Civil Cases No. 409.8; Statements of opinion, legal propositions, and predictions of future events are not actionable. *See Baker v. United Services Auto. Ass'n*, 661 So. 2d 128, 131 (Fla. 1st DCA 1995) (A misrepresentation, to be actionable, must be one of fact rather than opinion.) *Amazon; Thor Bear, Inc. v. Crocker Mizner Park Inc.*, 648 So.2d 168 (Fla. 4th DCA 1994) (claim of fraudulent misrepresentation is not actionable if premised on a mere opinion rather than a material fact); *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) ("An action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact."); *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994), *reh'g denied, clarification granted* (Apr. 4, 1995) ("Participants in a normal business transaction are not entitled to rely upon such 'ephemeral matters' as opinions, judgments or legal views expressed by an opposing party.").

**42. <u>Duty to Deliberate When Only the Plaintiff Claims Damages</u>**

Of course, the fact that I have given you instructions concerning the issue of each Plaintiff's damages should not be interpreted in any way as an indication that I believe that any particular Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**<u>AUTHORITY:</u>**

Eleventh Circuit Pattern Jury Instruction 3.8.1.

### 43. <u>Defendants' Contested Charge: Punitive Damages—Non-Bifurcated Procedure</u>

*a.    Punitive damages generally:*

There is an additional claim in this case that you must decide.  If you find for (Plaintiffs) and against (Defendant) on the misleading advertising claim, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Defendant and as a deterrent to others.

*b(2).  Direct liability for acts of managing agent, primary owner, or certain others:*

(Plaintiffs) claim that punitive damages should be awarded against American General for the acts of Peter Mordin, David Robinson, Kenneth Elliot, and Lalat Pattanaik.  Punitive damages are warranted against American General if you find by clear and convincing evidence—which I will define for you in a moment—that American General, through its employees or agents, was guilty of intentional misconduct which was a substantial cause of [loss] [injury] [or] [damage] to any Plaintiff. Under those circumstances you may, in your discretion, award punitive damages against (Defendant American General).  If clear and convincing evidence does not show such conduct by American General, punitive damages are not warranted against American General.

"Intentional misconduct" means that American General had actual knowledge of the wrongfulness of the conduct and there was a high probability of injury or damage to (claimant) and, despite that knowledge, it intentionally pursued that course of conduct, resulting in injury or damage.

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it is more compelling and persuasive. As I have already instructed you, "greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

**AUTHORITY:**

Florida Standard Jury Instructions in Civil Cases No. 503.2(a) and b(2).***Punitive damages not available on most claims.*** Plaintiffs have pleaded punitive damages only for their claim under Florida's Misleading Advertising Law. Despite already asking the court for leave to amend their Complaint to pursue punitive damages on their other claims and being denied the right to do so (Doc. 107), Plaintiffs insist on including a punitive damages instruction that they are not entitled to for claims beyond that Florida Misleading Advertising Claim.

In doing so, Plaintiffs rely on a body of inapplicable law that holds if a Plaintiff pleads conduct that would warrant punitive damages, the Plaintiff may in some circumstances pursue them. None of the language from *Scutieri* is present here.  Plaintiffs nowhere allege that American General acted "maliciously, wantonly, in bad faith, with gross [or] reckless disregard for the rights and interest of the Plaintiffs" as *Scutieri* alleged. Indeed, none of those words or phrases ("malicious," "wanton," "bad faith," "gross negligence," or "reckless disregard") appear anywhere in Plaintiffs' Second Amended Complaint. *See* Doc. 54. On similar facts, Florida District Courts distinguish *Scutieri's* applicability and deny Plaintiffs the right ot pursue punitive damages. *Factory Direct Tires Inc. v. Cooper Tire & Rubber Co.*, 3:11-CV-255-RV/EMT, 2013 WL 12099993, at *2 (N.D. Fla. Sept. 23, 2013). Additional Florida District cases distinguish Scutieri on similar grounds. *Ramjeawan v. Bank of Am. Corp.*, 09-20963-CIV, 2010 WL 1882262, at *2 (S.D. Fla. May 11, 2010) (Plaintiffs' reliance on the *Scutieri v. Paige* case to request that the issue of punitive damages be submitted to the jury is inapposite. *Scutieri v. Paige,* 808 F.2d 785, 791 (11thCir.1987). ("In the *Scutieri* case, the Eleventh Circuit found that the district court abused its discretion in denying plaintiffs the right to claim punitive damages because plaintiffs, who failed to include punitive damages in their prayer for relief, alleged in their pleadings that the defendants "acted intentionally and maliciously, wantonly, willfully, in bad faith, with gross and reckless disregard for the rights and interest of the Plaintiffs, . . .").

Moreover, Plaintiffs' prior Complaints in this case did *not* satisfactorily plead conduct that would justify punitive damages on any claim besides Florida's Misleading Advertising Law. *See* Doc. 54 (Plaintiffs' Second Amended Complaint).  The Florida punitive damages statute requires that the Plaintiff show that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued the course of conduct…" § 768.72, FLA. STAT. ANN.  For example, the Second Amended Complaint nowhere describes the actual knowledge nor the "high probability" that injury or damage to the claimant would result.

**PLAINTIFFS' OBJECTION:**

Plaintiffs object that this instruction is erroneously limited to Plaintiffs' claim for misleading advertising.  However, Plaintiffs alleged conduct supporting punitive damages for all claims and will present evidence that creates a jury question on such relief.  Thus, the court is required to present the punitive damages issue to the jury.  *Hetrick v. Ideal Image Dev. Corp*, 8:07-CV-871-T-33TBM, 2009 WL 33625, at *2 (M.D. Fla. Jan. 5, 2009) (where complaint contained allegations of intentional fraudulent misrepresentation, the court was "required to present the punitive damages issue to the jury."); *Scutieri v. Paige*, 808 F.2d 785, 792 (11th Cir.

1987) ("If the complaint alleges conduct that would support a claim for punitive damages, and if evidence is presented creating a jury question on such relief, the judge commits reversible error in not instructing the jury on that issue."); *Guillen v. Kuykendall*, 470 F.2d 745, 748 (5th Cir. 1972) (where complaint alleged malice and unwarranted excessive actions, the trial court erred in not instructing the jury as to exemplary damages).

**44. <u>Plaintiffs' Contested Charge: Punitive Damages—Non-Bifurcated Procedure</u>**

*a.     Punitive damages generally:*

There is an additional claim in this case that you must decide.  If you find for a Plaintiff and against American General on any of the claims, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Defendant and as a deterrent to others.

*b(2).  Direct liability for acts of managing agent, primary owner, or certain others:*

Plaintiffs claim that punitive damages should be awarded against American General for the acts of Peter Mordin, David Robinson, Kenneth Elliot, Lalat Pattanaik, Laban Pattanaik, and/or Innovative Private Strategies and Insurance Services. Punitive damages are warranted against American General if you find by clear and convincing evidence that Peter Mordin, David Robinson, Kenneth Elliot, Lalat Pattanaik, Laban Pattanaik, and/or Innovative Private Strategies and Insurance Services were personally guilty of intentional misconduct or gross negligence which was a substantial cause of loss, injury, or damage to a Plaintiff. Under those circumstances you may, in your discretion, award punitive damages against Defendant American General.  If clear and convincing evidence does not show such conduct by Peter Mordin, David Robinson, Kenneth Elliot, Lalat Pattanaik, Laban Pattanaik, and/or Innovative Private Strategies and Insurance Services, punitive damages are not warranted against American General.

"Intentional misconduct" means that American General, through Peter Mordin, David Robinson, Kenneth Elliot, Lalat Pattanaik, Laban Pattanaik, and/or Innovative Private Strategies and Insurance Services,  had actual knowledge of the wrongfulness of the conduct and there was a high probability of injury or damage to a Plaintiff and, despite that knowledge, it intentionally pursued that course of conduct, resulting in injury or damage. "Gross negligence" means that the conduct of American General, through Peter Mordin, David Robinson, Kenneth Elliot, Lalat

67

Pattanaik, Laban Pattanaik, and/or Innovative Private Strategies and Insurance Services, was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.]

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it is more compelling and persuasive. As I have already instructed you, "greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

**AUTHORITY:** Florida Standard Jury Instructions in Civil Cases No. 503.2(a) and b(2).

Plaintiffs' fraud claims—which are based upon American General's deliberate and knowing concealment that was designed to cause Plaintiffs detrimental reliance—are sufficient to award Plaintiffs punitive damages.  *Barrow v. Bristol-Myers Squibb*, 96-689-CIV-ORL-19B, 1998 WL 812318, at *47 (M.D. Fla. Oct. 29, 1998), *aff'd sub nom. Barrow v. Bristol Meyers Squibb*, 190 F.3d 541 (11th Cir. 1999) (stating that "[a] fraud claim sufficient to support an award of compensatory damages is also sufficient to support an award of punitive damages" and that punitive damages are appropriate if "the defendants made a deliberate and knowing concealment designed to cause, and actually causing, detrimental reliance by the plaintiff").

*Billian v. Mobil Corp.*, 710 So. 2d 984, 992 (Fla. 4th DCA 1998) ("in a non-disclosure case, punitive damages are appropriate only if the jury finds that the most aggravated form of non-disclosure has occurred-- that the defendants made a deliberate and knowing concealment designed to cause, and actually causing, detrimental reliance by the plaintiff"); *Bowles v. Osmose Utilities Services, Inc.,* 443 F.3d 671, 675 (8th Cir. 2006)(affirming award of punitive damages, finding pretrial disclosure of intent to seek punitive damages three weeks before trial was adequate notice); *Coker v. Cartwright*, No. 11-867, 2015 U.S. Dist. LEXIS 10479 (E.D. Ark. Jan. 27, 2015) (holding that a party need not plead punitive damages to seek them at trial; notice of intent to seek punitive damages in pretrial disclosures one month prior to trial was sufficient); *Soltys v. Costello*, 520 F.3d 737, 742 (7th Cir. 2008) (stating "Rule 54(c) contemplates an award of punitive damages if the party deserves such relief — whether or not a claim for punitive damages appears in the complaint." and " the fundamental legal error in this case may have been the parties' and the district court's shared assumption that a prayer for punitive damages had to appear in the complaint in order to sustain an award of such damages").

## DEFENDANT'S OBJECTION:

***Punitive damages not available on most claims.*** Plaintiffs have pleaded punitive damages only for their claim under Florida's Misleading Advertising Law. Despite already asking the court for leave to amend their Complaint to pursue punitive damages on their other claims and being denied the right to do so (Doc. 107), Plaintiffs insist on including a punitive damages instruction

that they are not entitled to for claims beyond that Florida Misleading Advertising Claim.

In doing so, Plaintiffs rely on a body of inapplicable law that holds if a Plaintiff pleads conduct that would warrant punitive damages, the Plaintiff may in some circumstances pursue them. None of the language from *Scutieri* is present here.  Plaintiffs nowhere allege that American General acted "maliciously, wantonly, in bad faith, with gross [or] reckless disregard for the rights and interest of the Plaintiffs" as *Scutieri* alleged. Indeed, none of those words or phrases ("malicious," "wanton," "bad faith," "gross negligence," or "reckless disregard") appear anywhere in Plaintiffs' Second Amended Complaint. *See* Doc. 54. On similar facts, Florida District Courts distinguish *Scutieri's* applicability and deny Plaintiffs the right ot pursue punitive damages. *Factory Direct Tires Inc. v. Cooper Tire & Rubber Co.*, 3:11-CV-255-RV/EMT, 2013 WL 12099993, at *2 (N.D. Fla. Sept. 23, 2013). Additional Florida District cases distinguish Scutieri on similar grounds. *Ramjeawan v. Bank of Am. Corp.*, 09-20963-CIV, 2010 WL 1882262, at *2 (S.D. Fla. May 11, 2010) (Plaintiffs' reliance on the *Scutieri v. Paige* case to request that the issue of punitive damages be submitted to the jury is inapposite. *Scutieri v. Paige,* 808 F.2d 785, 791 (11thCir.1987). ("In the *Scutieri* case, the Eleventh Circuit found that the district court abused its discretion in denying plaintiffs the right to claim punitive damages because plaintiffs, who failed to include punitive damages in their prayer for relief, alleged in their pleadings that the defendants "acted intentionally and maliciously, wantonly, willfully, in bad faith, with gross and reckless disregard for the rights and interest of the Plaintiffs, . . .").

Moreover, Plaintiffs' prior Complaints in this case did *not* satisfactorily plead conduct that would justify punitive damages on any claim besides Florida's Misleading Advertising Law. *See* Doc. 54 (Plaintiffs' Second Amended Complaint).  The Florida punitive damages statute requires that the Plaintiff show that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued the course of conduct…" § 768.72, FLA. STAT. ANN.  For example, the Second Amended Complaint nowhere describes the actual knowledge nor the "high probability" that injury or damage to the claimant would result.

### 45. __Damages Instruction__

You will be asked to make two calculations of damages.  The first damages question will ask you to determine the "benefit of the bargain."  It is the difference between the actual value of the transaction to Plaintiffs (i.e., what they received) and what the transaction's value would have been if the alleged facts regarding it were true.

You will second be asked to make a calculation about Plaintiffs' out of pocket damages. For this calculation, you will determine the difference between what Plaintiffs paid out of pocket for the transaction and the value of benefits that they received. This calculation will have separate questions that first ask for the total amount that each Plaintiff paid out of pocket, followed by questions about individual benefits that American General claims each Plaintiff received (such as insurance coverage, tax deductions in other years, and so on.).

If you find for American General, you will not consider the matter of damages. But, if you find for any of the Plaintiffs, you should award the prevailing Plaintiff an amount of money that the greater weight of the evidence shows will fairly and adequately compensate the Plaintiff for the damage they incurred as a result of American General's conduct.


## __AUTHORITIES:__

*Totale, Inc. v. Smith*, 877 So. 2d 813, 815 (Fla. Dist. Ct. App. 2004) ("The first standard is the "benefit of the bargain" rule which awards as damages the difference between the actual value of the property and its value had the alleged facts regarding it been true. The second standard is the "out-of-pocket" rule which awards as damages the difference between the purchase price and the real or actual value of the property." (citation omitted));

*Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1354 (M.D. Fla. 2003) ("Under the flexibility theory: . . . where the damages under the 'benefit of the bargain' rule are proved with sufficient certainty, that rule will be employed."); Florida Standard Jury Instructions—Contract and Business Cases No. 409.13; *Nordyne, Inc. v. Florida Mobile Home Supply, Inc.*, 625 So. 2d 1283, 1286 (Fla. 1st DCA 1993) ("The "flexibility theory" permits the court to use either the "out-of-pocket" or the "benefit-of-the-bargain" rule, depending upon which is more likely fully to compensate the injured party.").

**46. <u>Plaintiffs' Contested Charge: Additional Damages Instruction</u>**

Third, you will be asked to make a calculation of restitution.  If you find that American General was unjustly enriched at the expense of Plaintiffs in the amount of the premiums paid under the policies, American General is subject to claims for restitution by Plaintiffs.

Fourth, you will be asked to determine nominal damages.  If you decide that American General breached the contract but also that Plaintiff did not prove any loss or damage, you may still award Plaintiff nominal damages such as one dollar.

**<u>AUTHORITIES:</u>**

Restatement (Third) Of Agency § 2.07 (2006) (Restitution of Benefit); Florida Standard Jury Instructions—Contract and Business Cases No. 504.11 (Nominal Damages); *Dep't of Transp. v. Weisenfeld*, 617 So.2d 1071, 1086 (Fla. 5th DCA 1993) ("Whenever the intentional invasion of a legal right occurs the law infers some damage to the party whose rights were violated and if no evidence is adduced as to any particular specific loss or damage, the law 'rights' or remedies the wrong by awarding nominal damages, usually in the amount of $1.00.").

**<u>DEFENDANT'S OBJECTION:</u>**

American General objects to this instruction as irrelevant as Plaintiffs have not brought any claim for which Restitution or Nominal Damages are available.  Additionally, Plaintiffs' have not included in their prayer for relief in their live complaint any prayer for nominal or restitution damages.  As described elsewhere, the damage available under fraud claims are only benefit of the bargain damages or out-of-pocket damages.

### 47. **Plaintiffs' Contested Charge: Lost Profits**

Plaintiffs seek to recover their diminished profits caused by American General's fraud. These damages may be awarded under a calculation of "benefit of the bargain" or out-of-pocket damages.

To be entitled to recover lost profits, Plaintiffs must prove both of the following:

1. American General's actions caused Plaintiffs to lose profits; and

2. Plaintiffs can establish the amount of his, her, or its lost profits with reasonable certainty.

For Plaintiffs to establish the amount of his, her, or its lost profits with reasonable certainty, he, she, or it must prove that a reasonable person would be satisfied that the amount of lost profits which he, she, or it may be entitled to recover is not simply the result of speculation or guessing. Instead, Plaintiffs must prove that there is some standard by which the amount of lost profits may be established. Plaintiffs do not have to be able to prove that the amount of lost profits can be calculated with mathematical precision as long as he, she, or it has shown there is a reasonable basis for determining the amount of the loss.

To satisfy the "reasonable certainty" requirement, the Plaintiff need not identify the exact investment he, she, or it would have made but for the fraud. Rather, estimates using indices will suffice as a suitable yardstick to measure damages.

### AUTHORITY:

**Lost profit requirements:** Florida Standard Jury Instructions—Contract and Business Cases No. 504.3.

**Lost profits available under either out-of-pocket or benefit-of-the-bargain theory:** *Nordyne, Inc. v. Florida Mobile Home Supply, Inc*., 625 So.2d.1283, 1287 (Fla. 1st DCA 1993) (evidence of lost profits available under either out-of-pocket or benefit-of-the-bargain theory where "evidence of such damages was necessary to achieve justice"); *Blueskygreenland Environmental Solutions, LLC v. 21st Century Planet Fund, LLC,* 2014 WL 12515274, *2 (S.D. Fla. July 22, 2014) ("Applying the flexibility theory here, plaintiff would be entitled to recovery on its fraud claims for *either* out-of-pocket losses . . . *or* the loss of its bargain (measured by the amount of

profits it could have earned but lost as a result of the alleged fraud)").

**Plaintiff need not identify exact investment they would have made.**  *Nebula Glass Intern., Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1217 (11th Cir. 2006) ("In lost profit cases, Florida's courts have clearly held that once causation is proven with reasonable certainty, uncertainty as to the precise amount of the lost profits will not defeat recovery so long as there is a reasonable yardstick by which to estimate the damages."); *Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1354 (M.D. Fla. 2003) (finding expert's estimate of suitable investments that plaintiffs would have made was sufficient to support a claim for a well-managed account measure of damages); *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 328 (5th Cir. 1981) (finding that it was logical to use "the average percentage performance in the value of the Dow Jones Industrials or the Standard and Poor's Index during the relevant period as the indicia of how a given portfolio would have performed in the absence of the broker's misconduct").

## <u>DEFENDANT'S OBJECTION:</u>

Additionally, American General disputes that Plaintiffs are entitled to lost profits as they have articulated those damages throughout this litigation, as American General argues in its pending motion for summary judgment. Additionally, the evidence available from discovery affirmatively shows that no Plaintiff has or can satisfy the requirements for obtaining lost profits.

Plaintiffs have also misstated the reasonable certainty requirement for obtaining lost profits in the Eleventh Circuit, which holds that Plaintiffs must show what they would have invested in with reasonable certainty. *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177-78 (11th Cir. 2002) (plaintiff must show lost profits with reasonable certainty that party would have taken action to incur the gain pleaded as a loss); *Messer v. E.F. Hutton & Co.*, 833 F.2d 909, 922 (11th Cir. 1987) (plaintiff must show lost profits damages with reasonable certainty that they would have followed investment plan that led to gains).

Additionally, lost profits damages are not ordinarily part of a "benefit of the bargain" analysis.

American General offers the following Lost Profits instruction subject to these objections.

**48. Defendant's Contested Charge: Lost Profits**

To be entitled to recover lost profits, each Plaintiff must prove the following:

1. Defendant's actions caused the Plaintiff to lose profits; and

2. The Plaintiff can establish the amount of [his] [her] or [its] lost profits with reasonable certainty.

The "reasonable certainty" requirement means that the Plaintiff can show he or she would have actually made the investment that they claim they lost out on. Thus, if their claim for lost profits is dependent on Plaintiff taking some action that it is unclear they would have taken (such as investing in a product that it is unclear they would have invested in), then Plaintiff may not recover lost profits.

For Plaintiff to establish the amount of [his] [her] or [its] lost profits with reasonable certainty, [he] [she] or [it] must prove that a reasonable person would be satisfied that the amount of lost profits which [he] [she] or [it] may be entitled to recover is not simply the result of speculation or guessing. Instead, Plaintiff must prove that there is some standard by which the amount of lost profits may be established. Plaintiff does not have to be able to prove that the amount of lost profits can be calculated with mathematical precision as long as [he] [she] or [it] has shown there is a reasonable basis for determining the amount of the loss.

**AUTHORITY:**

Florida Standard Jury Instructions—Contract and Business Cases No. 504.3;" *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177-78 (11th Cir. 2002) (plaintiff must show lost profits with reasonable certainty that party would have taken action to incur the gain pleaded as a loss); *Messer v. E.F. Hutton & Co.*, 833 F.2d 909, 922 (11th Cir. 1987) (plaintiff must show lost profits damages with reasonable certainty that they would have followed investment plan that led to gains).

**PLAINTIFFS' OBJECTION:**

Plaintiffs object to Defendant's proposed instruction that "The "reasonable certainty"

requirement means that the Plaintiff can show he or she would have actually made the investment that they claim they lost out on." This statement is inconsistent with Florida law and the authority cited by Defendant.

To satisfy the "reasonable certainty" requirement, the Plaintiff need not identify the exact investment he, she, or it would have made but for the fraud. Rather, estimates using indices will suffice as a suitable yardstick to measure damages. *Nebula Glass Intern., Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1217 (11th Cir. 2006) ("In lost profit cases, Florida's courts have clearly held that once causation is proven with reasonable certainty, uncertainty as to the precise amount of the lost profits will not defeat recovery so long as there is a reasonable yardstick by which to estimate the damages."); *Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1354 (M.D. Fla. 2003) (finding expert's estimate of suitable investments that plaintiffs would have made was sufficient to support a claim for a well-managed account measure of damages); *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 328 (5th Cir. 1981) (finding that it was logical to use "the average percentage performance in the value of the Dow Jones Industrials or the Standard and Poor's Index during the relevant period as the indicia of how a given portfolio would have performed in the absence of the broker's misconduct").

### 49. **Defendant's Contested Charge: Instructions on Defendants' Affirmative Defenses**

If the greater weight of the evidence supports one or more of Plaintiffs' claims against American General, then you shall consider the defenses raised by American General.

If, however, the greater weight of the evidence does not support American General's defenses and the greater weight of the evidence supports one or more of Plaintiffs' claims, then your verdict should be for those Plaintiffs in the total amount of their damages (which you will also determine).

If you find for Plaintiffs on any of their negligence claims, and if the greater weight of the evidence shows that both Plaintiffs and American General were negligent and that the negligence of each contributed as a legal cause of loss or damages sustained by Plaintiffs on their claim for negligent misrepresentation, you should determine what percentage of the total negligence of all parties to this action was caused by each.

In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of any Plaintiff. The court will enter a judgment based on your verdict and, if you find that any Plaintiff was negligent in any degree, the court in entering judgment will reduce the total amount of damages by the percentage of negligence which you find was caused by any Plaintiff. The court will also take into account, in entering judgment against the Defendant whom you find to have been negligent, the percentage Defendant's negligence compared to the total negligence of all the parties or third parties to this action.

In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of (identify any additional person or entity who will be on verdict form). The court in entering judgment will take into account your allocation of negligence among all persons or entities who you find contributed to any Plaintiff's damages.


**AUTHORITY:**

Last two paragraphs from 501.4 COMPARATIVE NEGLIGENCE, NON-PARTY FAULT AND MULTIPLE DEFENDANTS. The instruction is appropriate because Plaintiffs have brought claims that sound in negligence, including negligent misrepresentation.

**PLAINTIFFS' OBJECTION:**

Plaintiffs object to the last three paragraphs of Defendant's proposed instruction because it incorrectly instructs the jury to apportion fault. Florida's comparative fault statute only applies to negligence actions and specifically excludes actions "based upon an intentional tort." F.S. § 768.81(4)(a) and (4)(b). *See also*, *R.J. Reynolds Tobacco Co. v. Schoeff*, 178 So. 3d 487, 492 (Fla. 4th DCA 2015) ("Section 768.81 does not permit the reduction of compensatory damages by plaintiff's comparative fault where the suit is based upon an intentional tort"); *Hennis v. City Tropics Bistro, Inc.*, 1 So. 3d 1152, 1154 (Fla. 5th DCA 2009) (section 768.81 "expressly applies only to negligence cases and does not apply to 'any action based upon an intentional tort.'"); *Wal-Mart Stores, Inc. v. McDonald*, 676 So. 2d 12, 22 (Fla. 1st DCA 1996), *approved sub nom.*

*Merrill Crossings Associates v. McDonald*, 705 So. 2d 560 (Fla. 1997) (holding that intentional tortfeasors are not to be included within the concept of fault when determining a negligent party's percentage of liability under section 768.81, Florida Statutes.).

Fraud claims—such as Plaintiffs—are intentional torts not subject to the comparative fault statute. *R.J. Reynolds Tobacco Co. v. Allen*, 42 Fla. L. Weekly D491 (Fla. 1st DCA Feb. 24, 2017) ("apportionment of fault is not required by section 768.81, Florida Statutes, where a jury finds —as it found at trial here—that a defendant committed intentional torts of fraudulent concealment and conspiracy to fraudulently conceal"); *Meyer v. Thompson*, 861 So. 2d 1256, 1258 (Fla. 4th DCA 2003) (reversible error to instruct jury on comparative negligence and allowing jury to apportion fault on claims of fraudulent concealment and "conduct far beyond that of negligence"); *Millette v. Tarnove*, 435 Fed. Appx. 848, 852–53 (11th Cir. 2011) (vacating judgment that allowed jury to apportion fault for fraudulent misrepresentation).

In fact, American General's intentional tort is the core of this action. The Florida Supreme Court has that the "based upon an intentional tort" in the comparative fault statute "imply to us the necessity to inquire whether the entire action . . . is founded or constructed on an intentional tort. In other words, the issue is whether an action comprehending one or more negligent torts actually has at its core an intentional tort by someone." *Merrill Crossings Associates v. McDonald*, 705 So. 2d 560, 563 (Fla. 1997) (holding comparative fault statute did not apply in negligence action where substance of action was that plaintiff was victim of an intentional tort). Here, the substance of Plaintiffs' entire action is that they were the victims of American General's intentional withholding of information that the VEBA Plans were listed transactions. Thus, under Florida law, the jury should not be permitted to apportion fault in this matter.

Plaintiffs further object that Defendant's proposed instruction allows the jury to decide if Plaintiffs' claims are intentional torts. Florida's comparative fault statute requires the <u>court</u> to determine whether the statute applies to a given case. *Millette v. Tarnove*, 435 Fed. Appx. 848, 853 (11th Cir. 2011) (citing F.S. § 768.81(4)(a)).

Plaintiffs further object that the burden of proof required to establish these defenses is clear and convincing evidence. *Watson Clinic, LLP v. Verzosa*, 816 So. 2d 832, 834 (Fla. 2d DCA 2002) ("The party raising estoppel must prove its elements by clear and convincing evidence.); *Zurich American Insur. Co. v. Frankel Enters.*, 287 Fed. Appx. 775, 779 (11th Cir 2008) ("Under Florida law, equitable estoppel is to be applied with great caution, and each element must be proven with clear and convincing evidence."), *West Indies Network-I, LLC v. Nortel Networks, (CALA) Inc.*, 243 Fed. Appx. 482, 485 (11th Cir. 2007) (Promissory estoppel has no application unless the evidence is clear and convincing"); *Choctawhatchee Electric. Coop., Inc. v. Gulf Power Co.*, 265 So. 2d 417, 421 (Fla. 1st DCA 1972) (applying clear or convincing evidence standard to the defense of laches, estoppel, or waiver.)

**50. <u>Defendant's Contested Charge: Limitations</u>**

On American General's first defense, the issue for you to decide is when each Plaintiff knew or should have known, through the exercise of any diligence, that the allegedly fraudulent transaction was suspect.

American General must prove this defense by a preponderance of the evidence.

**<u>AUTHORITIES:</u>**

*Brooks Tropicals, Inc. v. Acosta*, 959 So. 2d 288, 296 (Fla. Dist. Ct. App. 2007) (citing *Davis v. Monahan,* 832 So.2d 708, 709–10 (Fla.2002).); F.S.A. § 95.031(2)(a); *W. Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So. 3d 635, 639 (Fla. 2d DCA 2015), *review denied sub nom. W. Brook Isles Partner's 1, LLC v. Commonwealth Land Title Ins. Co.*, 182 So. 3d 637 (Fla. 2015) ("The statute of limitations for fraud begins to run when the plaintiff should have discovered, exercising any diligence, that the allegedly fraudulent transaction was suspect.") (citing *Breitz v. Lykes–Pasco Packing Co.,* 561 So.2d 1204, 1205 (Fla. 2d DCA 1990).).

**51. <u>Plaintiff's Contested Charge: Limitations</u>**

On American General's first defense, the issue for you to decide is when each Plaintiff knew or should have known with the exercise of reasonable diligence that they had a cause of action.

Plaintiffs were not required to exercise reasonable diligence until he, she or it has available information that would have prompted a reasonable person to investigate.  Such information must alert a reasonable person to the probability that misleading statements or significant omissions had been made.

American General must prove this defense by a preponderance of the evidence.

**<u>AUTHORITIES:</u>**

*Brooks Tropicals, Inc. v. Acosta*, 959 So. 2d 288, 296 (Fla. Dist. Ct. App. 2007) (citing *Davis v. Monahan,* 832 So.2d 708, 709–10 (Fla.2002).); F.S.A. § 95.031(2)(a); *Merck & Co. v. Reynolds*, 559 U.S. 633, 634 (2010) ("inquiry notice" and "storm warnings" "identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating"); *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (the information must "alert a reasonable person to the probability that misleading statements or significant omissions had been made.'"); Eleventh Circuit Civil Pattern Jury Instruction No. 3.7.2.

**<u>DEFENDANT'S OBJECTION</u>**

Plaintiff's articulation of the limitations standard in this instruction is based on other Circuits' law even though these claim accrual issues are for Florida common law claims. Defendant's limitations standard (above) is based on applicable Florida law and accurately states the accrual rule applicable to the Plaintiffs' claims here.

**52. Defendant's Contested Charge: Comparative Negligence Instruction.**

On American General's next defense, the issues for you to decide are whether each Plaintiff was negligent in relying on the statements they claim American General made to them about the VEBA's benefits; and, if so, whether such negligence was a contributing legal cause of Plaintiffs' loss or damages.

**Authorities:** Adapted from Pattern Jury Charge § 409.11-12.


## PLAINTIFFS' OBJECTION:

Plaintiffs object to Defendant's proposed instruction on comparative negligence because it incorrectly instructs the jury to apportion fault. Florida's comparative fault statute only applies to negligence actions and specifically excludes actions "based upon an intentional tort." F.S. § 768.81(4)(a) and (4)(b). *See also*, *R.J. Reynolds Tobacco Co. v. Schoeff*, 178 So. 3d 487, 492 (Fla. 4th DCA 2015) ("Section 768.81 does not permit the reduction of compensatory damages by plaintiff's comparative fault where the suit is based upon an intentional tort"); *Hennis v. City Tropics Bistro, Inc.*, 1 So. 3d 1152, 1154 (Fla. 5th DCA 2009) (section 768.81 "expressly applies only to negligence cases and does not apply to 'any action based upon an intentional tort.'"); *Wal-Mart Stores, Inc. v. McDonald*, 676 So. 2d 12, 22 (Fla. 1st DCA 1996), *approved sub nom. Merrill Crossings Associates v. McDonald*, 705 So. 2d 560 (Fla. 1997) (holding that intentional tortfeasors are not to be included within the concept of fault when determining a negligent party's percentage of liability under section 768.81, Florida Statutes.).

Fraud claims—such as Plaintiffs—are intentional torts not subject to the comparative fault statute. *R.J. Reynolds Tobacco Co. v. Allen*, 42 Fla. L. Weekly D491 (Fla. 1st DCA Feb. 24, 2017) ("apportionment of fault is not required by section 768.81, Florida Statutes, where a jury finds —as it found at trial here—that a defendant committed intentional torts of fraudulent concealment and conspiracy to fraudulently conceal"); *Meyer v. Thompson*, 861 So. 2d 1256, 1258 (Fla. 4th DCA 2003) (reversible error to instruct jury on comparative negligence and allowing jury to apportion fault on claims of fraudulent concealment and "conduct far beyond that of negligence"); *Millette v. Tarnove*, 435 Fed. Appx. 848, 852–53 (11th Cir. 2011) (vacating judgment that allowed jury to apportion fault for fraudulent misrepresentation) . Thus, the jury should not be permitted to apportion fault in this action.

In fact, American General's intentional tort is the core of this action. The Florida Supreme Court has that the "based upon an intentional tort" in the comparative fault statute "imply to us the necessity to inquire whether the entire action . . . is founded or constructed on an intentional tort. In other words, the issue is whether an action comprehending one or more negligent torts actually has at its core an intentional tort by someone." *Merrill Crossings Associates v. McDonald*, 705 So. 2d 560, 563 (Fla. 1997) (holding comparative fault statute did not apply in negligence action where substance of action was that plaintiff was victim of an intentional tort). Here, the substance of Plaintiffs' entire action is that they were the victims of American General's intentional withholding of information that the VEBA Plans were listed transactions. Thus, under Florida law, the jury should not be permitted to apportion fault in this matter.

Plaintiffs further object that Defendant's proposed instruction allows the jury to decide if Plaintiffs' claims are intentional torts.  Florida's comparative fault statute requires the <u>court</u> to determine whether the statute applies to a given case. *Millette v. Tarnove*, 435 Fed. Appx. 848, 853 (11th Cir. 2011) (citing F.S. § 768.81(4)(a)).

**53. Defendant's Contested Charge: Release**

American General's next defense is release. On this defense, American General claims that Plaintiffs released American General from liability through the documents that Plaintiffs signed. A release occurs where a party signs a document that releases another party from liability.

In a case like this one where some of Plaintiffs' claims are for fraud, the release that Plaintiffs sign must be *specific* to the elements of the fraud claim. A general release of claims that is not specific about what is being released is not sufficient to release a fraud claim, though it may release other claims.

American General must prove this defense by a preponderance of the evidence.

**AUTHORITIES:**

*Philip Morris1 USA Inc. v. Skolnick*, 171 So. 3d 747, 753 (Fla. 4th DCA 2015), *reh'g denied* (Sept. 2, 2015); *Plumpton v. Cont'l Acreage Dev. Co., Inc.*, 830 So. 2d 208, 211 (Fla. 5th DCA 2002) ("In the instant case, we find the clear and unambiguous language of the release was a complete defense to these claims, even though they were unrelated to the litigation from which the release resulted."); *Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 84 (Fla. 5th DCA 2016) (specific disclaimers still enforceable in fraud claims even if general disclaimers insufficient); *Le Macaron, LLC v. Le Macaron Dev. LLC*, 8:16-CV-918-17TGW, 2016 WL 6211718, at *4 (M.D. Fla. Oct. 24, 2016) (same).

**54. <u>Plaintiff's Contested Charge: Release</u>**

American General's next defense is release. On this defense, American General claims that Plaintiffs released American General from liability through the documents that Plaintiffs signed. A release occurs where a party signs a document that releases another party from liability.

In a case like this one where some of Plaintiffs' claims are for fraud, the release that Plaintiffs sign must *specifically* state that it is incontestable on the ground of fraud. A general release of claims that is not specific about what is being released is not sufficient to release a fraud claim.

American General must prove this defense by a preponderance of the evidence.

**<u>AUTHORITIES:</u>**

*Philip Morris1 USA Inc. v. Skolnick*, 171 So. 3d 747, 753 (Fla. 4th DCA 2015), *reh'g denied* (Sept. 2, 2015); *Plumpton v. Cont'l Acreage Dev. Co., Inc.*, 830 So. 2d 208, 211 (Fla. 5th DCA 2002) ("In the instant case, we find the clear and unambiguous language of the release was a complete defense to these claims, even though they were unrelated to the litigation from which the release resulted."); *Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 84 (Fla. 5th DCA 2016) (specific disclaimers still enforceable in fraud claims even if general disclaimers insufficient); *Le Macaron, LLC v. Le Macaron Dev. LLC*, 8:16-CV-918-17TGW, 2016 WL 6211718, at *4 (M.D. Fla. Oct. 24, 2016) (same); *Glob. Quest, LLC v. Horizon Yachts, Inc*., 849 F.3d 1022, 1028 (11th Cir. 2017) ("a contract provision, including an 'as is' clause, cannot preclude a fraud claim, unless the contract expressly states that it is incontestable on the ground of fraud.")

**<u>DEFENDANT'S OBJECTION:</u>**

The minor difference in wording between Plaintiffs' and Defendant's instruction centers on the specificity required for a release to be effective.  As briefed in American General's pending Motion for Summary Judgment, Florida courts have consistently held that a *specific* contractual provision of non-reliance is enforceable. Indeed, a Florida Court of Appeals faced with exactly this issue last year stated, "the 'non-reliance' clauses in this case negate a claim for fraud in the inducement because Appellant cannot recant his contractual promises that he did not rely upon extrinsic representations." *Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 84 (Fla. 5th DCA 2016).

**55. <u>Defendant's Contested Charge: Assumption of Risk</u>**

American General's next defense is that Plaintiffs assumed the risk of participating in the VEBA

transactions. In order to succeed on this defense, American General must show that:

   (a)  Plaintiffs assumed the risks of participating in the VEBA transaction; and

   (b)  When Plaintiffs assumed the risk, they did so expressly (the assumption of risk cannot be

      implied).


**<u>AUTHORITIES:</u>**

*McGraw v. R And R Investments, Ltd.*, 877 So. 2d 886, 891 (Fla. 1st DCA 2004) (though implied assumption of risk doctrine subsumed into comparative negligence analysis, express assumption of risk remains a valid affirmative defense where "actual consent exists such as where one voluntarily participates in a contact sport." (citation omitted)). Plaintiffs' discussions of the "assumption of risk" doctrine deal only with the implied assumption of risk, ignoring the express assumption of risk which is treated differently under Florida law. Thus, while an implied assumption of risk is a factor that is merged into the contributory negligence analysis the jury will perform, express assumption of risk remains an affirmative defense. *See also Kuehner v. Green*, 436 So. 2d 78, 80 (Fla. 1983) ("If it is found that the plaintiff recognized the **risk** and proceeded to participate in the face of such danger the defendant can properly raise the defense of ***express* assumption** of **risk**."). The second element of the above instruction makes the "express assumption" requirement clear to the jury.


**<u>PLAINTIFFS' OBJECTION:</u>**

Plaintiffs object to American General's proposed instruction because the Florida Supreme Court has held that the affirmative defense of assumption of risk is merged into the defense of contributory negligence. *Blackburn v. Dorta*, 348 So. 2d 287, 293 (Fla. 1977) ("we hold that the affirmative defense of implied assumption of risk is merged into the defense of contributory negligence and the principles of comparative negligence . . . shall apply in all cases where such defense is asserted."); *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1353 (M.D. Fla. 2015) (citing *Blackburn* for proposition that implied assumption of risk doctrine is merged into the defense of contributory negligence); *Millette v. DEK Techs., Inc.*, 08-60639-CV, 2009 WL 3242010, at *6 (S.D. Fla. Oct. 6, 2009) (granting summary judgment on assumption of risk defense because it is merged with the defense of contributory negligence). On this basis alone, the Court should not permit American General to instruct the jury on this defense. **Plaintiffs incorporate their objections set forth above to American General's proposed instruction on contributory negligence.**

**56. <u>Defendant's Contested Charge: Estoppel</u>**

American General's next defense is called "estoppel." Judicial estoppel is an equitable doctrine 'used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings where doing so would make 'a mockery of justice.'

American General contends that Plaintiffs are estopped from bringing their claims because they told the IRS that they were relying only on their financial advisors, but now claim they were relying on American General. To succeed on its estoppel defense, American General must show that:

(a)  Plaintiffs took a position in another proceeding, like their IRS examination;

(b)  Plaintiffs obtained a benefit from taking that position in that proceeding; and

(c)  Plaintiffs are taking an inconsistent position now in this proceeding.


**<u>AUTHORITIES:</u>**

"[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). *Brown & Brown, Inc. v. Sch. Bd. of Hamilton County*, 97 So. 3d 918, 920 (Fla. 5th DCA 2012) (". . . judicial estoppel as an equitable doctrine 'used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings' where doing so would make 'a mockery of justice.' One of the elements necessary to establish judicial estoppel is that the opposing party must have 'successfully maintained' an inconsistent position in the prior proceeding." (citations omitted)); *Town of Oakland v. Mercer*, 851 So. 2d 266, 268 (Fla. 5th DCA 2003) ("A claim made or position taken in a former action or judicial proceeding will, in general, estop the party to make an inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party." (citations omitted)).

Plaintiffs' objections fail to address the principal argument, which is that Plaintiffs *did* receive reduced penalties by taking the position that they relied on independent financial advisors rather than American General.

Plaintiffs' objections regarding settlement are misguided. In those cases, the parties to litigation were settling with each other and so there was no determination made by a Court.  In this case, the parties settled *with the IRS* in the quasi-judicial proceeding, and the IRS reduced the Plaintiffs' penalties and assessments because Plaintiffs took that position.

**PLAINTIFFS' OBJECTION:**
Plaintiffs object to Defendant's proposed instruction because the second paragraph misstates the evidence and is heavily slanted towards American General.

Plaintiffs object that the instruction should include the following statement: "For American General to prevail on this affirmative defense you are required to find that American General had "clean hands."" *See Epstein v. Epstein*, 915 So. 2d 1272, 1275 (Fla. 4th DCA 2005) ("As equitable remedies, both a set-off and an equitable lien are subject to the principle that one who seeks the aid of equity must do so with clean hands.").

Plaintiffs object to American General's instruction on estoppel because it is an issue of law for the court to decide, and not appropriate for determination by the jury.  See Florida Standard Jury Instructions—Contract and Business Cases No. 416.35 ("The committee has not drafted an instruction for the affirmative defense of judicial estoppel because judicial estoppel is an equitable doctrine which a court is to determine.") (citing *Blumberg v. USAA Cas. Ins. Co.*, 790 So.2d 1061, 1066 (Fla. 2001)).

Plaintiffs object to the estoppel instruction because it misstates the elements of judicial estoppel. Courts look to three factors in determining whether to apply the doctrine of judicial estoppel: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether the party <u>succeeded</u> in persuading a court to accept that party's earlier position; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

Plaintiffs object to Defendant's proposed instruction because the position taken in the IRS audits is not "inconsistent" with their current position.  Plaintiffs stated to the IRS that they believed the VEBAs to be compliant.  That position is not inconsistent with Plaintiffs' position in this case— that American General duped them into participating in a VEBA scheme that turned out to be non-compliant.  Secondly, the IRS never accepted Plaintiffs' position that the VEBAs were compliant.  The opposite is true: the IRS rejected that position and assessed penalties.  Indeed, judicial estoppel does not apply to Plaintiffs' positions taken in the IRS examinations because they were not "successful. "  Id; *See also Strauss v. Rent–A–Center, Inc.,* 192 Fed. Appx. 821, 823 (11th Cir.2006) (application of judicial estoppel reversible error where there was a lack of evidence of intent to deceive by the debtor and of success in the prior tribunal).

Additionally, "Florida courts (and the majority of courts in general) all appear to agree that judicial estoppel does not apply to prior claims <u>resolved by settlement</u>*." Kearney Constr. Co. LLC v. Travelers Cas. & Sur. Co. of Am.*, 2016 WL 1425803, at *9 (M.D. Fla. Mar. 17, 2016), *report and recommendation adopted sub nom. Kearney Constr. Co., LLC v. Travelers Cas.,* 2016 WL 1394372 (M.D. Fla. Apr. 8, 2016). *See also, In re Bankvest Capital Corp.,* 375 F.3d 51, 60– 61 (1st Cir.2004) (refusing to apply judicial estoppel where prior proceeding ended in settlement); *Blanton v. Inco Alloys Int'l, Inc.,* 108 F.3d 104, 109–10 (6th Cir.), *supplemented by,* 123 F.3d 916 (6th Cir.1997) (noting that judicial estoppel should be applied only to positions a party successfully maintained in a prior suit, and that a settlement results in "successful" positions for neither side); *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1038 (2d Cir.1993)

(noting that because a settlement neither requires nor implies judicial endorsement of a particular argument, a position taken in a case that settles cannot give rise to judicial estoppel).

Finally, Plaintiffs derive no unfair advantage for the position that they were duped by American General's failure to disclose material information.  The prior positions that American General claims to be inconsistent were taken during Plaintiffs' IRS audits—proceedings that had no effect whatsoever on American General.  Judicial estoppel is inapplicable and the Court should strike this instruction.

**57. <u>Waiver</u>**

American General's next defense is that Plaintiffs waived their right to bring their claims.

Waiver is the intentional relinquishment of a known right. To succeed on this defense, American

General must prove that:

    (a)  Plaintiffs had a right, privilege, advantage, or benefit;

    (b)  That they knew about that right, privilege, advantage, or benefit; and

    (c)  Plaintiffs intentionally relinquished that right, privilege, advantage, or benefit.

**<u>AUTHORITIES:</u>**

*Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098, 1104 (Fla. 5th DCA 2006) ("The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right.").

    ***Burden of proof: preponderance.*** *Tillis v. Liverpool & London & Globe Ins. Co.*, 35 So. 171, 176 (Fla. 1903) ("Such an estoppel or waiver must be established by the person claiming it by a preponderance of evidence . . . .")); *Pensacola Jr. Coll. Faculty Ass'n v. Bd. of Trustees of Pensacola Jr. Coll.*, 593 So. 2d 254, 259 (Fla. 1st DCA 1992) ("Waiver by inaction is an affirmative defense which must be established by a preponderance of the evidence by the employer.")

**<u>PLAINTIFFS' OBJECTION:</u>**

American General must prove this affirmative defense by clear and convincing evidence. *Watson Clinic, LLP v. Verzosa*, 816 So. 2d 832, 834 (Fla. 2d DCA 2002) ("The party raising estoppel must prove its elements by clear and convincing evidence.); *Zurich American Insur. Co. v. Frankel Enters.*, 287 Fed. Appx. 775, 779 (11th Cir 2008) ("Under Florida law, equitable estoppel is to be applied with great caution, and each element must be proven with clear and convincing evidence."), *West Indies Network-I, LLC v. Nortel Networks, (CALA) Inc.*, 243 Fed. Appx. 482, 485 (11th Cir. 2007) (Promissory estoppel has no application unless the evidence is clear and convincing"); *Choctawhatchee Electric. Coop., Inc. v. Gulf Power Co.*, 265 So. 2d 417, 421 (Fla. 1st DCA 1972) (applying clear or convincing evidence standard to the defense of laches, estoppel, or waiver.)

**58. <u>Defendant's Contested Charge: Unclean Hands</u>**

American General contends that Plaintiffs have come to Court with "unclean hands." Unclean hands means that Plaintiffs are asking to recover from American General despite their own unconscionable, bad faith, or inequitable conduct.

American General contends that Plaintiffs have "unclean hands" because: 1) Plaintiffs told American General and others that they were not relying on American General or anyone except for their own advisors for tax advice; 2) Plaintiffs benefitted by keeping many years' worth of tax deductions that they claim are improper and never amended their tax returns; and 3) Plaintiffs told the IRS they relied exclusively on their advisors for advice concerning the VEBA, but now sue to hold others responsible.

To succeed on showing unclean hands, American General must prove, by a preponderance of the evidence, that:

    (a)    Plaintiffs engaged in unconscionable, bad faith, or inequitable conduct; and

    (b)    The unconscionable, bad faith, or inequitable conduct relates to Plaintiffs' claims against American General; and

    (c)    That the unconscionable, bad faith, or inequitable conduct affected the transaction at issue.

**<u>AUTHOROTIES:</u>**

**Generally.** *Shahar v. Green Tree Servicing LLC*, 125 So. 3d 251, 253 (Fla. 4th DCA 2013) ("Recently, this court found that unclean hands is tantamount to "[u]nscrupulous practices, overreaching, concealment, trickery or other unconscientious conduct.").

**Second Element:** *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450–51 (11th Cir. 1993) ("For a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements. First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted.");

**Unclean Hands as Inequitable or Bad Faith Conduct.** *Royal Palm Properties, LLC v. Premier Estate Properties, Inc.*, 10-80232-CV, 2010 WL 3941745, at *2 (S.D. Fla. Oct. 6, 2010) ("The unclean hands doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'")

**Burden of Proof: Preponderance.** *Regions Bank v. Commonwealth Land Title Ins. Co.*, 977 F. Supp. 2d 1237, 1268 (S.D. Fla. 2013) ("Commonwealth's fourth defense, unclean hands, requires that Regions committed an unconscionable act directly related to its claim. Commonwealth has failed to prove by a preponderance of the evidence that Regions committed unconscionable acts.").

**PLAINTIFFS' OBJECTION:**   Plaintiffs object to Defendant's proposed instruction because the second paragraph misstates the evidence and is heavily slanted towards American General.

American General must prove this affirmative defense by clear and convincing evidence. *Watson Clinic, LLP v. Verzosa*, 816 So. 2d 832, 834 (Fla. 2d DCA 2002) ("The party raising estoppel must prove its elements by clear and convincing evidence.); *Zurich American Insur. Co. v. Frankel Enters.*, 287 Fed. Appx. 775, 779 (11th Cir 2008) ("Under Florida law, equitable estoppel is to be applied with great caution, and each element must be proven with clear and convincing evidence."), *West Indies Network-I, LLC v. Nortel Networks, (CALA) Inc.*, 243 Fed. Appx. 482, 485 (11th Cir. 2007) (Promissory estoppel has no application unless the evidence is clear and convincing"); *Choctawhatchee Electric. Coop., Inc. v. Gulf Power Co.*, 265 So. 2d 417, 421 (Fla. 1st DCA 1972) (applying clear or convincing evidence standard to the defense of laches, estoppel, or waiver.)

**59. <u>Election of Foreperson Explanation of Verdict Form[s] (Eleventh Circuit Civil Pattern Jury Instruction No. 3.9)</u>**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**AUTHORITY:** Eleventh Circuit Civil Pattern Jury Instruction No. 3.9

**60.  Multiple Claims, Numerous Parties, Consolidated Cases**

In your deliberations, you will consider and decide [several] [(state the number)] distinct claims. (Identify claims to be considered.) Although these claims have been tried together, each is separate from the other[s], and each party is entitled to have you separately consider each claim as it affects that party. Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would had each claim been tried before you separately.

**AUTHORITY:**  Florida Standard Jury Instruction in Civil Cases No. 601.4